Gary M. CHASTAIN et al., Petitioners,

v.

Charles G. KOONCE et al.,
Respondents.

No. C–3478.

Supreme Court of Texas.

Nov. 27, 1985.

Freeman, Hyde and Martin, John G. Hyde, Midland, for petitioners.

Al W. Schorre, Jr., Jad Davis, Midland, for respondents.

## OPINION ON MOTION FOR REHEARING

KILGARLIN, Justice.

Our opinion of June 19, 1985 is withdrawn and this opinion is substituted.

This deceptive trade practices case requires us to first determine if petitioners are consumers under the Deceptive Trade Practices-Consumer Protection Act. If so, we must examine whether the evidence supports a finding that respondents committed an unconscionable action or course of action. The Chastains, and three other couples who purchased property from Charles Koonce and J.P. Stroud, recovered judgment against Koonce and Stroud based on jury findings of unconscionable actions or an unconscionable course of action. The court of appeals reversed the trial court judgment, finding no evidence of unconscionability and refusing to consider whether the purchasers were consumers within the meaning of the DTPA. 674 S.W.2d 484. The Chastains and other purchasers petition this court to address the consumer question and to restore the jury finding of unconscionability based on the evidence. Finding no reversible error in the court of appeals' judgment, we affirm that judgment.

In 1979, Charles Koonce and J.P. Stroud began to sell five-acre tracts on the northern boundary of their 320 acre farm. At trial, there was ample testimony that Koonce and Stroud told the purchasers that lot 1 at the northeastern corner would be commercial but that lots 2 through 15 would be restricted for residential use only. Claiming they relied on these representations, the Chastains and the other three couples independently purchased lots 4, 5, 6 and 9 by warranty deed. The deeds contained restrictions concerning pets, maintenance and square footage of improvements. In addition, the deed restrictions mandated that the respective lots be used only for single family residential purposes. No subdivision map or plat was ever filed.

In January 1981, Koonce and Stroud sold lot 2 to David Metts. About seven months later, after the Chastains and other residential purchasers had constructed houses on their lots, Metts built an oilfield pipe storage yard on his property. All four residential couples testified that this commercial use of lot 2 was contrary to the sellers' representations of the restrictions on lots 2 through 15. Gary Chastain, who purchased lot 4, then began to make arrangements to acquire lot 3, to ensure that it remained residential. He testified that during these arrangements, Stroud threatened him. Specifically, Chastain stated that Stroud threatened to put a rubber plant up behind lots 2 through 15 and burn rubber all day, if Chastain did not stop complaining. Chastain also testified that Stroud sarcastically threatened to reacquire lot 3, and to put something "real nice" next door. Finally, Stroud threatened to knock Chastain's head off and his teeth out.

The jury found that Koonce and Stroud had made express warranties, misrepresentations, and had committed an unconscionable action or course of action in regards to the use of lot 2. The trial court disregarded the express warranty findings but rendered judgment for the purchasers based on the misrepresentations as unconscionable actions. The court of appeals determined that even if the purchasers did qualify as consumers, they could not recover because the jury finding of unconscionability was without support in the evidence.

■ Although we agree with the court of appeals' result, we must examine the question of the purchasers as consumers,

before we can examine the unconscionability question. If the purchasers are not consumers, then they have no standing under the act. Only consumers may recover under Tex.Bus. & Com.Code § 17.50(a). *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983). The statute itself defines a consumer to be an "individual ... who seeks or acquires by purchase or lease, any goods or services." Tex.Bus. & Com.Code § 17.45(4). In addition, in *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981), this court also determined that the goods or services sought or acquired by lease or purchase must form the basis of the complaint. Koonce and Stroud contend that the purchasers do not meet this second part of the test because they are complaining about lot number 2, a piece of property which none of the couples sought or acquired. Additionally, the sellers argue that the lots purchased by the four couples are not the basis of their complaint. The purchasers argue that the DTPA was specifically amended to cover real estate and that the act should be construed liberally to protect consumers. *See Cameron*, 618 S.W.2d at 539; Tex.Bus. & Com.Code § 17.44. Further, the Chastains and other purchasers argue that the purchase of a home is the ultimate consumer purchase and thus is in need of the specific protections which the DTPA provides.

The arguments made in this case relative to whether the purchasers are consumers under the DTPA are extremely similar to arguments made in *Parks v. U.S. Homes Corporation, Inc.*, 652 S.W.2d 479, 484 (Tex.Civ.App.—Houston [1st Dist.] 1983, writ dism'd). In *Parks*, the purchasers bought homes in a subdivision after relying on representations of the seller's agent that the subdivision would be restricted to homes of a particular style and price range. After the three complainants purchased their houses by deeds lacking deed restrictions, the developer altered its plan and the purchasers brought suit under the DTPA. In that case, the court of appeals determined that under the two-prong test ([1] acquiring or seeking to acquire goods or services by purchase or lease and [2] those goods or services must be the basis of the complaint), the purchasers of those homes were consumers. Similarly, we find the four couples who purchased land from Koonce and Stroud to be consumers within the meaning of the DTPA.

■ Recognizing that consumers have to meet both parts of the two-part definition, the *Parks* court first pointed out that real property is a good under the act. Tex.Bus. & Com.Code § 17.45(1). The act was specifically amended in 1975 to clarify the legislature's intent to insure that real property purchases could support individual causes of action. Because the four couples purchased land from the seller, they qualify as consumers under the first part of the definition.

Koonce and Stroud contest the purchasers' standing under the second prong of the test. This prong was first enunciated in *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980), and in *Cameron*. The DTPA is to be construed liberally to promote its underlying purposes "which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty." Tex.Bus. & Com.Code § 17.44. In addition, this court has determined that the act "clearly declares deceptive trade practices in the conduct of a real estate sale to be unlawful." *Woods v. Littleton*, 554 S.W.2d 662, 667 (Tex.1977).

The purchasers here are complaining of conduct occurring during the transaction which resulted in the purchase of these lots. Koonce and Stroud made representations calculated to induce these purchasers to buy the lots and which enhanced the desirability of the property. Thus, the purchasers are complaining about an aspect of the lots purchased and the transaction involved. Finally, we note that the legislature contemplated this type of situation as exhibited by the floor debate in the Texas Senate discussing sellers' promises which would not be fulfilled. The specific example used in the debate was promising the

erection of a shopping center with no intent to follow through on the promise. Debate on Tex.S.B. 48 on the floor of the Senate, 64th Leg. 3 (Feb. 10, 1975) (transcript available). Thus, we conclude that the purchasers in this suit qualify as consumers and have standing to sue under the DTPA.

Having decided that the purchasers are covered by the DTPA, we now may consider the second point of error, which complains that there was evidence to support the jury finding of unconscionability. The jury found that Koonce and Stroud had engaged in an unconscionable action or course of action with regard to the purchasers. Unconscionable action or course of action is defined by statute to describe an act which:

A. Takes advantage of the lack of knowledge, ability, or capacity of a person to a grossly unfair degree; or

B. Results in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration.

Tex.Bus. & Com.Code § 17.45(5). The purchasers did not specify whether they sought to show unconscionability under part A or B of the definition, so we must examine the facts to see if they support a finding of unconscionability under either definition.

■ Under the facts of our case, the purchasers failed to show any disparity between the value received and the consideration paid in the transaction. The record is devoid of any expert testimony relating to the value of the property at the time of the purchase. In addition, among the purchasers only Gary Chastain testified as to the consideration paid for the property. The only relevant testimony concerning land values in the record is expert testimony which explains the value at the time of trial and the value the land would have attained had the pipeyard not been placed on lot 2. These values were far in excess of the amount which Gary and Georgia Chastain paid for their lot.

■ The only other way in which the purchasers can recover is to show that Koonce and Stroud took advantage of the purchasers' lack of knowledge, ability, or capacity to a *grossly* unfair degree. We must assume that every word of a statute was used for a purpose and every word in that statute must be given effect if possible. *Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93, 96 (1957). Thus we must find evidence not simply that Koonce and Stroud took unfair advantage of the purchasers but that the advantage was grossly unfair. *See also Valley Datsun v. Martinez*, 578 S.W.2d 485 (Tex.Civ. App.—Corpus Christi 1979, no writ). We are unable to find any Texas case which defines this distinction. In *Hurst v. Sears, Roebuck & Co.*, 647 S.W.2d 249 (Tex.1983), we explained that impossibility of performance did not preclude a representation from being unconscionable. In addition, in that case we pointed out that a failure to do the impossible could be unconscionable if the promisor knew of the impossibility of the task when he promised to undertake it. *Id.* at 251. Knowledge or intent alone cannot, however, be the distinguishing factor of unconscionability, because the DTPA specifically provides for special damages if a consumer can show that the deceptive or misleading act was committed knowingly. *See* Tex.Bus. & Com.Code § 17.50(b)(1). Although knowledge and intent may make an act unconscionable, there must be some other means of distinction as well.

Koonce and Stroud contend that defining the difference between gross unfairness and mere unfairness is analogous to defining the difference between gross negligence and negligence. The comparison and analogy to this case are inappropriate. In *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981), this court defined gross negligence as:

[T]hat entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or wel-

fare of the person or persons to be affected by it.

We also wrote:

What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

*Burk Royalty Co.*, 616 S.W.2d at 922.

Section 17.45(5) does not expressly require a consumer prove the mental attitude of the defendant in order to recover actual damages. The legislative history of the 1979 amendments to the DTPA supports the conclusion that the legislature did not intend to require proof of intent, knowledge or conscious indifference to support recovery. As originally filed in the Senate, section 17.45(5)(A) would have been amended to read:

"Unconscionable action or course of action" means an act or practice which, to a person's detriment:

(A) *was intended to and did take* [takes] advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree.

The intent language was deleted prior to the legislature's passage of the DTPA amendments. This deletion discloses a legislative intent to reject a scienter requirement. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); *Big H Auto Auction, Inc. v. Saenz*, 665 S.W.2d 756, 758 (Tex.1984).

Section 17.45(5) is intended to be an objective standard. As the laundry list provisions of section 17.46(b) demonstrate, the legislature knows how to include a scienter requirement when it so chooses. In six of the twenty-three prohibitions listed in section 17.46(b), the legislature incorporated scienter requirements. *See* Tex.Bus. & Com.Code § 17.46(b), (9), (10), (13), (17), (22), (23). The remaining seventeen prohi-

bitions are objective. For example, it is not necessary to show under section 17.46(b)(7) that the defendant intended to mislead or deceive the consumer—only that the defendant represented goods or services to be of a particular standard when they were of another. *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1980). By this analysis, under section 17.45(5)(A), a consumer need only prove that he was taken advantage of to a grossly unfair degree. This should be determined by examining the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference.

It is a traditional rule of statutory construction that a word used in different parts of a statute will generally be given the same meaning throughout. The legislature used forms of the word "gross" in both subdivisions A and B of section 17.45(5). In subdivision B, an unconscionable action is defined as one which results in a *gross* disparity between the value received and the consideration paid. Subdivision A defines an unconscionable action as one which takes advantage of a person to a *grossly* unfair degree.

A consumer's proof of gross disparity under subdivision B does not require proof that the defendant acted intentionally, knowingly or with conscious indifference. Likewise, a consumer's proof of gross unfairness does not require proof that the defendant acted intentionally or knowingly to bring about the result.

The term "gross" should be given its ordinary meaning of glaringly noticeable, flagrant, complete and unmitigated. *Webster's Third New International Dictionary* 1002 (1976). The courts have had no problem determining what constitutes a gross disparity under subdivision B of section 17.45(5). A slight disparity between the consideration paid and the value received is not unconscionable; a glaring and flagrant disparity is. Unfairness is perhaps a more nebulous term than disparity, but this is not a reason to create a new definition for "gross."

Taking advantage of a consumer's lack of knowledge to a grossly unfair degree thus requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated. Based on the record as a whole, we find no evidence that the Chastains and the other three couples were taken advantage of to a grossly unfair degree.

The purchasers emphasize the telephone conversation between Gary Chastain and J.P. Stroud, in which Stroud threatened physical violence and to place a rubber burning plant in the vicinity of Gary Chastain's land. We find this unpersuasive. The phone conversation occurred approximately *one year* after the alleged misrepresentations occurred and do not reflect on the unfairness of the original transaction between the purchasers and Koonce and Stroud. As a result, we find no evidence of unconscionability.

Although we find that the purchasers have standing to sue under the DTPA, we affirm the court of appeals' judgment that there is no evidence of unconscionability. Accordingly, the judgment of the court of appeals is affirmed. Petitioners' motion for rehearing is overruled.

GONZALEZ, J., concurs.

GONZALEZ, Justice, concurring.

I concur with the result in this cause because the record contains no evidence of unconscionability. However, I disagree with the portion of the court's opinion that holds that Petitioners had standing to sue under the Deceptive Trade Practices Act.

Only consumers may recover under the DTPA. The act defines "consumer" as an "individual ... who seeks or acquires by purchase or lease, any goods or services." Tex.Bus. & Comm.Code Ann. § 17.45(4) (Vernon 1982).

The court correctly observes that a plaintiff must satisfy a two-prong test in order to qualify as a consumer under the DTPA: (1) the plaintiff must have sought or acquired goods or services by purchase or lease; and (2) *the goods or services pur-chased or leased must form the basis of the complaint.* A plaintiff failing to establish either of these two requirements does not have standing under the DTPA, but does have common law remedies available for redress. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981).

Under the DTPA, " 'goods' means tangible chattels or *real property* purchased or leased for use." Tex.Bus. & Comm.Code Ann. § 17.45(1) (Vernon 1982). The DTPA does not define "real property". It is our duty to construe a law as written, and, if possible, to ascertain its intention from the language used therein. *Gov't. Personnel Mut. Ins. Co. v. Wear,* 151 Tex. 454, 251 S.W.2d 525, 529 (1952). Real property has been defined as "land, and generally whatever is erected or growing upon or affixed to land. Also, rights issuing out of, and next to, and *exercisable within or about land."* *Black's Law Dictionary* (5th ed.) at 1096 (1979) (emphasis added). The lots, "goods", that Petitioners purchased are the land, its fixtures, and all its accompanying exercisable rights.

Petitioners, individually, purchased Lots 4, 5, 6, and 9. This dispute centers around the use of Lot 2.

Petitioners' deeds contain restrictive covenants which limit the use of their property to residential purposes. *None of Petitioners' deeds contain restrictive covenants limiting the use of Lot 2 or the surrounding property.*

Petitioners are unable to show any vested or exercisable right in Lot 2. Regardless, they assert a violation of the DTPA as a result of the use or "misuse" of Lot 2. Petitioners have therefore failed to bring themselves within the second prong of the *Cameron* test—that the goods or services purchased or leased must form the basis of a DTPA complaint.

The DTPA was designed to discourage deception and unconscionable conduct. I wholeheartedly agree with its purpose. The Act has given consumers a much needed remedy. See *Kish v. Van Note,* 692 S.W.2d 463 (Tex.1985). But expansion of

the Act beyond the intent of the Legislature exceeds our judicial function and creates confusion.[1] Unfortunately, the by-product may be a legislative reaction against consumer protection.

For the above reasons, I only concur with the result in this cause.

**1.** Another example of how we have created confusion and expanded the Act beyond that intended by the Legislature is our recent opinion of *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985). In *Weitzel,* the court allowed a DTPA recovery without evidence that the deceptive act was a producing cause of the consumer's damages.