Elizabeth **WILLIAMS**, Appellant,

v.

**TRAIL DUST STEAK HOUSE, INC., d/b/a Ambassador Homes, Wick Building Systems, Inc. and C.I.T. Financial Services,** Appellees.

No. 2–85–019–CV.

Court of Appeals of Texas, Fort Worth.

April 1, 1987.

Rehearing Denied April 29, 1987.

Belvin R. Harris, Gainesville, for appellant.

Gardere & Wynne, Michael A. Barragan, Dallas, Gandy, Michener, Swindle, Whitaker & Pratt, Robert D. Akers, Fort Worth, H. Mack Barnhart, Gainesville, for appellees.

## OPINION

FENDER, Chief Justice.

This is an appeal from a judgment for appellee C.I.T. Financial Services, plaintiff below, for $34,635.11 plus interest and attorneys' fees. C.I.T. Financial Services (hereinafter C.I.T.) sued appellant, Elizabeth Williams, on a retail installment contract. Williams had purchased a mobile home from Trail Dust Steak House, Inc., d/b/a Ambassador Homes (hereinafter Ambassador). Wick Building Systems, Inc. (hereinafter Wick) was the manufacturer of the home. The judgment also awarded nothing upon Williams' counterclaim against C.I.T. and cross-action against Ambassador and Wick for alleged violations of the Deceptive Trade Practices—Consumer Protection Act (hereinafter DTPA).

We reverse and remand on the basis of appellant's fifth point of error.

Appellant purchased a double-wide mobile home in January, 1982 from Ambassador for $30,055.00 plus a $6,000.00 down payment. Appellant made her first payment of $430.93 in April of 1982. Her last payment was made in August of 1982. Appellant testified that she did not make the rest of the payments on the mobile home because it was defective. She stated that she called C.I.T. and Ambassador several times to notify them of the defects. She further testified that she wrote a letter, dated September 8, 1982, to notify C.I.T. of her complaints.

Appellant's attorney sent a letter to C.I.T., dated November 12, 1982, demanding that C.I.T. refund all the monies paid by appellant. According to appellant, this letter listed the many complaints concerning the mobile home including the following: the home had shifted after being put together, catching the phone wire between the walls; the walls bulged and popped out in the living room; the molding was loose in various parts of the house; there were no supporting beams so the curtain rods could be put up; there was no ceiling fan fixture/receptacle; the carpet buckled in various parts of the house; the toilet leaked; the heating and cooling vents were inadequate; the sliding glass doors for the showers were never delivered; and, the back door and various doors in the house would not close properly. Appellant testified that no one ever fixed any of these defects.

In her "First Amended Counterclaim And Cross-Action", appellant listed more than 40 defects existing in the mobile home. She alleged that appellees Ambassador and Wick engaged in an unconsciona-

ble action or course of action in the manufacturing and sale of the home and in failing to remedy such defects, thereby taking advantage of her lack of knowledge, ability, experience, and capacity in purchasing a mobile home. She further alleged that appellees' unconscionable actions constitute a DTPA violation. *See* TEX.BUS. & COM. CODE ANN. sec. 17.50(a)(3) (Vernon Supp. 1987).

The jury affirmatively found that Ambassador and Wick sold the mobile home to appellant in a defective condition. Appellant's fifth point of error challenges the court's method of submitting to the jury the question of whether this act constituted an unconscionable action or course of action.

The statement of facts from the trial below indicates that appellant made objections to the charge on the basis of her written request for issues which were offered earlier and denied by the court. Appellant objected at trial and again objects on appeal that the trial court's method of submitting the unconscionability issue is erroneous. She argues further that the court's charge improperly conditions the finding of unconscionability on a finding that the act of selling the home in a defective condition was *knowingly* committed.

Appellees argue in reply that the court's method of submitting the issues is essentially the same as appellant's method. They claim that appellant's requested special issues also condition the unconscionability question on a finding that the sale of the defective mobile home was made knowingly because appellant asks whether the cross defendant "knew or should have known" the mobile home was defective when sold. Appellees state that appellant cannot complain of the court's method of submitting these issues since she essentially got what she asked for.

The DTPA defines unconscionable action or course of action as follows:

[A]n act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capaci-

ty of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

*See* TEX.BUS. & COM.CODE ANN. sec. 17.45(5) (Vernon Supp.1987).

The Texas Supreme Court has addressed the question of whether subsection A of this definition conditions the finding of unconscionability on proof that the accused acted with knowledge. *See Chastain v. Koonce,* 700 S.W.2d 579 (Tex.1985) (opinion on reh'g). In its discussion of whether the facts in *Chastain* supported a finding of unconscionability on the basis that the sellers took advantage of the purchaser's lack of knowledge, ability, experience, or capacity to a grossly unfair degree, the Court stated:

Section 17.45(5) does not expressly require a consumer prove the mental attitude of the defendant in order to recover actual damages. The legislative history of the 1979 amendments to the DTPA supports the conclusion that the legislature did not intend to require proof of intent, knowledge or conscious indifference to support recovery. As originally filed in the Senate, section 17.45(5)(A) would have been amended to read:

"Unconscionable action or course of action" means an act or practice which, to a person's detriment:

(A) *was intended to and did take* [takes] advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree.

The intent language was deleted prior to the legislature's passage of the DTPA amendments. This deletion discloses a legislative intent to reject a scienter requirement. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985); *Big H Auto Auction, Inc. v. Saenz,* 665 S.W.2d 756, 758 (Tex.1984).

Section 17.45(5) is intended to be an objective standard. As the laundry list provisions of section 17.46(b) demonstrate, the legislature knows how to include a scienter requirement when it so

chooses. In six of the twenty-three prohibitions listed in section 17.46(b), the legislature incorporated scienter requirements. *See* Tex.Bus. & Com.Code sec. 17.46(b), (9), (10), (13), (17), (22), (23). The remaining seventeen prohibitions are objective. For example, it is not necessary to show under section 17.46(b)(7) that the defendant intended to mislead or deceive the consumer—only that the defendant represented goods or services to be of a particular standard when they were of another. *Smith v. Baldwin*, 611 S.W.2d 611 (Tex.1980). By this analysis, under section 17.45(5)(A), a consumer need only prove that he was taken advantage of to a grossly unfair degree. This should be determined by examining the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference.

*Id.* at 583 (emphasis in original).

In the present case, the trial court submitted the following special issues and received the following answers:

ISSUE NO. 7

Do you find that Cross-Defendants sold the mobile home in question to Elizabeth Williams in a defective condition?

Answer: "Yes" or "No"

Answer *Yes*

If you have answered Issue No. 7 "Yes," then answer Issue No. 8; otherwise do not answer No. 8.

ISSUE NO. 8

Do you find that Cross-Defendants knowingly sold the mobile home in question to Elizabeth Williams in a defective condition?

You are instructed that "knowingly" means actual awareness of the act or practice, if any, asked about in Issue No. 7, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Answer: "Yes" or "No"

Answer *No*

If you have answered Issue No. 8 "Yes," then answer Issue No. 9; otherwise do not answer No. 9.

ISSUE NO. 9

Do you find that the conduct you have found in answer to Issue No. 8 was an unconscionable action or course of action?

In connection with this issue, you are instructed that unconscionable action or course of action means an act or practice which, to a person's detriment, either:

(a) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to [a] grossly unfair degree, or

(b) results in a gross disparity between the value received and the consideration paid, in a transaction involving the transfer of consideration.

Answer: "Yes" or "No"

Answer _____

If you have answered Issue No. 8 and No. 9 "Yes," then answer Issue No. 9A; otherwise do not answer No. 9A.

ISSUE NO. 9A

Do you find that the conduct you have found in Issue No. 8 and No. 9 was the producing cause of Elizabeth Williams' damage, if any?

Answer: "Yes" or "No"

Answer _____

For the same reasons as those stated by the Court in *Chastain*, we hold that the trial court improperly conditioned the finding of unconscionability on the finding that appellees knowingly sold the mobile home in a defective condition. *See id.*

Appellees contend that appellant cannot complain of the court's charge since her requested issues also tied the question of unconscionability to a finding that the act was committed knowingly. We do not agree with this interpretation of appellant's request. Appellant's requested issues were worded as follows:

*Issue No. 7:* Do you find that Cross-Defendant sold the mobile home in question to Elizabeth Williams when they *knew or should have known* it was in a defective condition before the sale? [Emphasis added.]

Answer "Yes" or "No": _____

If you have answered special issue no. 7 "yes", then answer special issue no. 8.

*Issue No. 8:* Do you find that the conduct inquired about in special issue no. 7 was an unconscionable act or course of action on the part of Cross-Defendant?

In connection with this issue, you are instructed that unconscionable action or course of action means an act or practice which, to a person's detriment, either:

(a) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree, or

(b) results in a gross disparity between the value received and the consideration paid, in a transaction involving the transfer of consideration.

Answer "Yes" or "No": _____

*Issue No. 9:* Do you find that the conduct you have found in special issue no. 7 and 8 was a producing cause of Elizabeth Williams' damages, if any?

Answer "Yes" or "No": _____

*Issue No. 10:*[1] Do you find that Cross-Defendants were knowingly guilty of the unconscionable action inquired about in the foregoing issue?

You are instructed that "knowingly" means actual awareness of the act or practice, if any, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Answer "Yes" or "No": _____

While the court's version conditions unconscionability on whether the cross defendants *knew* of the mobile home's defective condition, appellant's version conditions unconscionability on whether cross defendants knew *or should have known* of the mobile home's defective condition. The Second Restatement of Torts says:

The words "should know" are used throughout the Restatement of this Subject to denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another,

or would govern his conduct upon the assumption that such fact exists.

RESTATEMENT (SECOND) OF TORTS sec. 12(2) (1965). The comment following this section states that the phrase "should know" implies that the actor owes another *a duty of ascertaining the fact* in question. The comment further explains that:

"Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.

*Id.* comment a.

This definition makes it clear that the actor need not have "actual awareness", as required by the court's definition of "knowingly", when his skill or superior knowledge imposes a duty to ascertain the fact in question. We find, then, that the court's version does not give the appellant essentially the same special issues she requested.

Having found the court's charge was erroneous, we sustain appellant's fifth point of error and reverse and remand this cause for a new trial. Given this holding, we need not address appellant's remaining contentions.

The judgment is reversed and remanded.

---

1. Appellant's special issue No. 10 forms a question on the right to exemplary damages which is based on a finding that the conduct was knowingly committed. *See* TEX.BUS. & COM.CODE ANN. sec. 17.50(b)(1) (Vernon Supp.1987).