**DWIGHT'S DISCOUNT VACUUM CLEANER CITY, INC.,**
**Plaintiff–Appellee,**

**v.**

**The SCOTT FETZER COMPANY, Kirby Company Division,**
**Defendant–Appellant.**

**No. 87–1939.**

United States Court of Appeals,
Fifth Circuit.

Nov. 28, 1988.

Beverly Willis Bracken, Steve L. Moody, Naman, Howell, Smith & Lee, Waco, Tex., for defendant-appellant.

Merrilee L. Harmon, Charles M. McDonald, Waco, Tex., for plaintiff-appellee.

Before REAVLEY, JOHNSON, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge.

Defendant Scott Fetzer Co., Kirby Co. Division ("Kirby"), appeals a judgment and jury verdict rendered against Kirby for alleged violations of the Texas Deceptive Trade Practices and Consumer Protection Act. Judgment was awarded to plaintiff Dwight's Discount Vacuum Cleaner City ("Dwight's") in the amount of $28,470, plus $2,000 in additional damages and $89,000 in attorneys' fees. Finding this judgment to be in error, we reverse and render judgment for defendant Kirby.

## I.

Dwight Krzywonski, owner of Dwight's Discount Vacuum Cleaner City, operates a store where he sells vacuum cleaners and other appliances at discount prices. One of the brands of new vacuum cleaners that Dwight's sells is the Kirby line of vacuums.

Dwight's acquires its Kirby vacuum cleaners from Kirby distributors. In selling to Dwight's, however, the Kirby distributors violate their distributorship agreements with Kirby because Kirby's marketing system is organized exclusively on direct in-home sales. Any sales a distributor makes to Dwight's, if discovered by Kirby, could lead to Kirby's immediate termination of its distributor agreement with the offending distributor. Dwight's has successfully persuaded a number of distributors to ignore their agreements with Kirby through promises that Kirby would never find out about these forbidden sales transactions. Dwight's attracts distributors by such methods as agreeing to efface serial numbers from the machines and agreeing to fill out warranty cards as if individual consumers had purchased the vacuums directly from the distributors after an in-home demonstration. Kirby refers to such deceptive activities on Dwight's part as "bojacking."

Carol Weeks was a Kirby distributor in Spokane, Washington. In June 1986, Weeks agreed to begin employment as a distributor for Viking Vacuum Cleaner Co. Despite her new employment and despite Kirby's prohibition against dual distributorships, Weeks ordered from Kirby 120 vacuum cleaners and shampoo attachments on June 13, 1986. Kirby shipped the merchandise on June 16, 1986, and the 120 units arrived at a warehouse in Spokane on June 26, 1986. In the meantime, Weeks contacted Dwight's and offered to sell the store

these 120 units at $75 above cost or about $38,000. Weeks made this offer in disregard of her obligation under the distributorship agreement to sell Kirbys only to individuals through the in-home sales program. Dwight's agreed to the terms of the sale and arranged to pay for the merchandise by means of two cashier's checks. Dwight Krzywonski arrived in Spokane on July 1, 1986 and presented Weeks with the two cashier's checks, one in the amount of $28,740 and the other for $9,000. Krzywonski and Weeks proceeded to the Bank of Spokane, which held the original bill of lading on the 120 vacuums. Weeks delivered the $28,740 cashier's check to the bank, and the bank released the bill of lading on the 120 Kirbys.

In the meantime, Kirby learned that Weeks was attempting to sell the 120 vacuums to the retailer Dwight's. Kirby also learned that Weeks had abandoned the office from which she had conducted her business as a Kirby distributor. Since Kirby believed it was entitled to reclaim the 120 vacuum cleaners, Kirby contacted the warehouse and requested that the merchandise not be released. Due to the contested title, the warehouse agreed to not release the vacuum cleaners.

After stopping shipment of the units, Weeks' superiors at Kirby delivered a letter at Weeks' last-known office and in the letter terminated the distribution agreement. Kirby cited as reasons for Weeks' termination her attempted sale of the 120 vacuums to Dwight's and her vacating her office without notice to Kirby.

Shortly thereafter, Kirby sued Weeks and Dwight's in Washington and Ohio. Dwight's sued Kirby in federal district court in Texas, alleging tortious interference with contract, conversion, and unconscionable acts violative of the Texas Deceptive Trade Practices Act. Kirby moved for a change of venue in the Texas action, but the district court denied the motion. Kirby next sought a writ of mandamus from the Fifth Circuit. This Circuit refused to grant Kirby's writ. In October 1986, Kirby deposited in the registry of the court in Washington the $28,740 that it had received from the Bank of Spokane for the 120 vacuum cleaners.

Prior to trial in Texas, Kirby filed a counterclaim against Dwight's for tortious interference with the distributorship agreement between Kirby and Weeks. Also before trial, Weeks returned to Dwight's the $9,000 she had received as her payment for the 120 units. At trial, a jury found that Kirby had not interfered with the contract between Dwight's and Weeks and that it had not converted property belonging to Dwight's. The jury did find, however, that Kirby had committed unconscionable acts under the Texas DTPA and awarded Dwight's $28,740 in actual damages and $89,000 in attorneys' fees. Although the jury found for Kirby on the counterclaim, it awarded no damages. The court accordingly entered judgment for Dwight's in the amount of $28,740 as actual damages, $2,000 in extra damages, and $89,000 in attorneys' fees.

Kirby alone appeals, challenging the jury verdict and judgment under the Texas DTPA. Kirby argues that under Texas law Dwight's is not a consumer for DTPA purposes or, alternatively, if Dwight's is a consumer, Kirby has not committed any unconscionable acts violative of the DTPA.

## II.

Appellant Kirby properly preserved its objections to the sufficiency of the evidence by means of a motion for judgment notwithstanding the verdict. We review the trial court's denial of this motion under the standard set forth in *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969):

The Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such

quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

Judged by this standard, the evidence in the record does not support the conclusion that Kirby's actions were unconscionable as the Texas DTPA defines the concept of "unconscionability."

Section 17.50 of the Texas Deceptive Trade Practices and Consumer Protection Act provides:

(a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(3) any unconscionable action or course of action by any person

Tex.Bus. & Com.Code Ann. § 17.50 (Vernon's 1987). Texas courts have held that one must be a consumer to maintain a private cause of action for damages and attorney's fees under this section of the Act. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 388 (Tex. 1982); *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980); *Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W. 2d 180, 183 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The statute itself defines "consumer" to include "an individual, partnership, [or] corporation ... who seeks or acquires by purchase or lease any goods or services." Tex.Bus. & Com. Code Ann. § 17.45(4). A plaintiff establishes standing as a consumer in terms of his relationship to the transaction, and not by contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired must form the basis of the plaintiff's complaint. *Flenniken v. Longview Bank & Trust Co.*,

661 S.W.2d 705, 707 (Tex.1983); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

In the instant case, Kirby contends that Dwight's failed to plead consumer status and, therefore, Dwight's should be barred from recovery under the DTPA. Dwight's, however, did allege a cause of action under the DTPA. We have been unable to locate any Texas case holding in circumstances like these that Dwight's was a DTPA "consumer" vis-a-vis Kirby. We may, however, assume *arguendo* that he satisfied this test because the second issue which Kirby raises is dispositive of the case.

The key question is whether judgment n.o.v. should have been granted on the finding that Kirby acted unconscionably under the DTPA. Essentially, Kirby contends that under the definition of "unconscionable action" none of Kirby's acts in this case violates the DTPA. The statute defines unconscionable action as an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Tex.Bus. & Com.Code Ann. § 17.45(5). Unconscionable action, by the terms of the statute, then, is an act or practice which either (a) is overbearing and evidences misuse of superior bargaining power or (b) results in a gross disparity between consideration paid and value received.

In *Chastain v. Koonce*, the Texas Supreme Court refined the definition of "unconscionable action." 700 S.W.2d 579 (Tex. 1985). *See also Chandler v. Housholder*, 722 S.W.2d 217, 218–19 (Tex.App.—Eastland 1986, writ ref'd n.r.e.); *Tri–Continental Leasing Corp. v. Law Office of Richard W. Burns*, 710 S.W.2d 604, 609 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The court, in considering whether there was evidence to support a jury finding of unconscionability, stated:

Section 17.45(5) is intended to be an objective standard.... The term "gross" should be given its ordinary meaning of glaringly noticeable, flagrant, complete and unmitigated.

700 S.W.2d at 583. As to subdivision A of section 17.45(5), the *Chastain* court said that "[t]aking advantage of a consumer's lack of knowledge to a grossly unfair degree thus requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." Id. at 584. The Supreme Court interpreted subdivision B to mean: "A slight disparity between the consideration paid and the value received is not unconscionable; a glaring and flagrant disparity is." Id. at 583.

According to Texas law, the primary emphasis in construing the DTPA is on the intention of the legislature, keeping in view "the old law, the evil and the remedy." *Pennington v. Singleton*, 606 S.W.2d 682, 686 (Tex.1980); *Woods v. Littleton*, 554 S.W.2d 662, 665 (Tex.1977). This intent is to be determined from the entire Act rather than from an isolated part. *Big H Auto Auction, Inc. v. Saenz Motors*, 665 S.W.2d 756, 758 (Tex.1984); *Pennington*, 606 S.W. 2d at 686. Section 17.44 states that the DTPA's underlying purposes are "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty." Tex.Bus. & Com.Code Ann. § 17.44.

With these standards in mind, we find that there was insufficient evidence to support the jury's finding that Kirby's conduct was "unconscionable" as defined in section 17.45(5)(A) and (B) of the DTPA. The evidence in the record does not support the conclusion that Kirby's actions took advantage of the knowledge, ability, experience, or capacity of Dwight's to a grossly unfair degree. The evidence and findings of fact do not indicate that Dwight's was unfairly disadvantaged by any superior bargaining power on Kirby's part. Dwight's was and still is in business making several million dollars a year from the sale of vacuum cleaners. The record shows that Dwight's was intimately familiar with the Kirby distribution system and had, on prior occasions, advised Kirby distributors how they could make sales to Dwight's and conceal these from Kirby. Dwight's knew exactly what it was doing in this transaction. The facts paint Dwight's as an extremely capable and experienced actor in the vacuum cleaner business with a good deal of special knowledge about the internal workings of the Kirby distribution network. Under these facts, it is impossible to conclude that Kirby took advantage of any "lack of knowledge, ability, experience, or capacity" of Dwight's "to a grossly unfair degree." The evidence in the record, therefore, does not support a recovery by Dwight's under subdivision A of section 17.45(5).

Subdivision B as well does not support the jury verdict. Dwight's argues that there existed at the time of purchase a gross disparity between the value received (nothing) and the value Dwight's paid (approximately $38,000). Kirby, on the other hand, claims that at the time of purchase Dwight's received value in the form of title in the goods, either through the bill of lading or the release from the bank, and with a value of at least the $38,000 Dwight's paid Weeks.

In *Chastain v. Koonce*, the Texas Supreme Court held that any disparity in value between the value received and the consideration paid is to be determined at the time of purchase. 700 S.W.2d at 582. See also *Bel–Go Associates—Mula Rd. v. Vitale*, 723 S.W.2d 182, 189 (Tex.App.—Houston [1st Dist.] 1986, no writ). Under this principle, the vacuums Dwight's sought to buy were offered at a wholesale price ($38,-000) that was much lower than the retail revenue ($96,000) Dwight's sought to gain from them. Although Dwight's argues that it paid money for the vacuums and received nothing, inasmuch as they are still in custody of a court in Washington state, the fact is that Dwight's entered into the sale knowing that Kirby could have a cause of action against it. The value of the vacuum cleaners to Dwight's must therefore be reduced by the uncertainty of the legal status of the sale.

This conclusion is reinforced to the extent that the "gross disparity" test obvi-

ously mirrors a fraud-type measure of recovery, in which a consumer receives a product inferior in quality to that which he intended to buy or, alternatively, when the consumer is defrauded out of his money entirely. As far as the $38,000 Dwight's paid Weeks is concerned, both Dwight's and Weeks admitted at trial that Weeks' $9,000 profit had been returned to Dwight's. The other $28,740 originally forwarded to Kirby has been tendered into the registry of the Superior Court of Spokane County, Washington. The shipment of vacuum cleaners and accessories has been detained by the Washington court to await resolution of the controversy. Both goods and funds are in the hands of the court until the lawsuit in Washington is decided. Pending the outcome of the Washington state court proceedings, then, we cannot even say for certain that Dwight's has been deprived of the vacuum cleaners.

Dwight's presents the additional counterargument that even if it violated the contract between Kirby and Weeks, Kirby had no right to file a counter-claim against Dwight's. Consequently, Dwight's asserts, the gross disparity remains. This argument is without merit and is, in fact, an affront to the principles of fair dealing.

### III.

In sum, the record does not support the jury finding that Kirby acted unconscionably under the Texas DTPA. As the statute defines "unconscionability," neither did Kirby use superior bargaining power to take advantage of Dwight's to a grossly unfair degree nor did Kirby's actions result in a gross disparity between consideration paid and value received. Under the proper standard of review, we find insufficient evidence to sustain the jury's verdict.

For the above reasons, the district court's judgment is REVERSED, and judgment is RENDERED that Dwight's take nothing.