

IN THE
TENTH COURT OF APPEALS

_____

No. 10-08-00260-CV

_____

BAYSYSTEMS NORTH AMERICA LLC,
                                                    Appellant

v.

ROSEBUD-LOTT INDEPENDENT SCHOOL DISTRICT,
                                                    Appellee

_____

From the 82nd District Court
Falls County, Texas
Trial Court No. CV-36,455T

_____

**MEMORANDUM OPINION**

_____

After a jury trial, the trial court entered a judgment against Appellant BaySystems North America LLC (BaySystems) and in favor of the plaintiff below, Appellee Rosebud-Lott Independent School District (the District), on the District's negligent misrepresentation and DTPA claims. We will reverse and remand.

**Background**

The parties' briefs and the record reflect the following undisputed factual background: In 1998, the District hired Sam Cohen to examine the roofs on some of its

schools and to make recommendations for repairs. For the high school roof, which was a sprayed polyurethane roof (SPF) over a metal deck (or metal panels), Cohen noted and recommended:

> The large main roof of this facility has mildew over the entire area. There are a few coating blisters, some with water inside, and an area of wet foam. I recommend this roof level be power washed clean, repairs made to coating blisters and area of wet foam, then recoat with 15 to 20 mils of new protective coating.

> The roof level around the old gym has some foam blisters and the entire roof has an extreme reversion of the base coating. These problems should be covered by the manufacturer's warranty.

Upon receiving Cohen's recommendations, the District hired John Rogers, an engineer, to evaluate and implement Cohen's recommendations. Rogers made bid specification documents to serve as the basis for bids, and his specifications included a list of products for the repair jobs on the several school buildings. One product was Eversil 580, a silicone roof coating sold by Everest Coatings, Inc., which was subsequently acquired by and known as BaySystems at the time of trial.

The District selected the bid of Mainland Industrial Coatings, Inc. to perform the repair work. Mainland's bid for the high school roof repair was $43,596. In accordance with Rogers's specification, Mainland obtained the Eversil 580 roof coating from Everest Coatings and applied it to the high school roof in early 2000. The cost of the coating that Mainland purchased from Everest Coatings for the high school was approximately $25,000. Cohen was hired by Rogers to ensure that Mainland's work complied with Rogers's specifications, and Cohen confirmed that the work was in compliance.

Mainland then requested the issuance of a warranty from Everest Coatings,

which issued a ten-year "system" warranty that was dated March 1, 2000 and that was signed by the District, Mainland, and BaySystems. The express warranty's pertinent terms include:

> EVEREST COATINGS, INC. warranties to the owner and applicator that the roof system will not leak for a period of (10) years due to deterioration caused by ordinary weathering conditions. Should the coating leak during this period due to such deterioration, Everest Coatings, Inc. will furnish at no charge, all materials, (coatings), equipment and labor necessary to repair such leaks.
>
> …
>
> THIS WARRANTY DOES NOT COVER:
>
> …
>
> 2. Damage caused by structural movement, failure of the substrate over which coating is applied, faulty construction, or design (of the building).
>
> …
>
> THE FOREGOING SHALL CONSTITUTE EVEREST'S SOLE AND EXCLUSIVE LIABILITY IN CONNECTION WITH THE PURCHASE OR USE OF THE SYSTEM. THIS WARRANTY IS IN LIEU OF ALL OTHER WRITTEN OR ORAL, EXPRESS OR IMPLIED WARRANTIES AND EVEREST EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE.

Over the next few years and into 2006, the high school experienced roof leaks, and when notified of the leaks by the District, BaySystems, pursuant to the warranty, sent Brazos Urethane, Inc. to repair the leaks several times. BaySystems paid Brazos Urethane approximately $40,000 in labor and materials for the repairs to the high school roof. Dissatisfied with the repairs, the District's attorney eventually demanded that BaySystems pay for an entire new roof for the high school (at a cost of around $300,000).

This lawsuit followed.

The District sued BaySystems for breach of warranty, negligent misrepresentation, DTPA violations, and fraud. The District also sued Rogers, who settled before trial. Each side's experts agreed that the roof's SPF foam coating had undergone reversion (it had reverted to its original "uncured," "wet," "tacky," or "gummy" state), that the Eversil 580 roof coating was not properly adhering to the reverted foam and was the cause of the roof leaks, and that Rogers improperly specified the Eversil 580 roof coating for application on the reverted foam.[1]

The jury was charged on breach of warranty, DTPA violations, fraud, and negligent misrepresentation and found for the District on all of the claims. The jury found actual damages of $390,000 (the cost to repair the roof) and $43,596 (the District's economic loss), DTPA additional damages of $500,000 for conduct committed knowingly, exemplary damages of $500,000, and attorneys' fees of $159,500. The District elected to recover on its DTPA and negligent misrepresentation claims, and the trial court signed a final judgment awarding the District $390,000 in damages on the DTPA claim, $43,596 in damages on the negligent misrepresentation claim, additional damages of $500,000 for knowing violations of the DTPA, exemplary damages of $200,000, and attorneys' fees. BaySystems appeals, raising seventeen issues.

---

[1] The experts did disagree on whether the roof's substrate—for purposes of BaySystems's warranty exclusion for "failure of the substrate over which coating is applied"—consisted of the reverted foam coating only (BaySystems's view) or all of the roof's various layers (the District's view).

**Negligent Misrepresentation**

In issue four, BaySystems contends that no evidence supports the jury finding on negligent misrepresentation. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

The elements of a claim for negligent misrepresentation are:

1. a defendant provides information in the course of his business, or in a transaction in which he has a pecuniary interest;

2. the information supplied is false;

3 the defendant did not exercise reasonable care or competence in obtaining or communicating the information;

4. the plaintiff justifiably relies on the information; and

5. the plaintiff suffers damages proximately caused by the reliance.

*Johnson v. Baylor Univ.,* 188 S.W.3d 296, 302 (Tex. App.—Waco 2006, pet. denied); *see Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991).

Specifically, BaySystems argues that there is no evidence that the District

justifiably relied on any representation by BaySystems. We agree. The evidence shows that, before BaySystems had any interaction at all with the District, Rogers, the engineer hired by the District, specified the Eversil 580 coating and that the District's contractor, Mainland, obtained it and applied it. BaySystems had nothing to do with Rogers's specification of the Eversil 580 coating or Mainland's application of it. The evidence thus conclusively shows that the District did not rely on any representation by BaySystems in the District's purchase of the Eversil 580 coating; there were no representations.[2] We sustain issue four.[3]

## DTPA

The trial court submitted three DTPA claims to the jury:

(1) DTPA breach of warranty (*see* TEX. BUS. & COMM. CODE ANN. § 17.50(a)(2) (West 2011));

(2) false, misleading, or deceptive acts or practices (*see id.* §§ 17.46(b), 17.50(a)(1)); and

(3) unconscionable action or course of action (*see id.* § 17.50(a)(3).

In Question 1, the jury found that BaySystems failed to comply with the warranty and that its failure to comply was a producing cause of the District's damages. In Question 7, the jury found BaySystems engaged in a false, misleading, or deceptive act or practice that the District relied on to its detriment and that was a producing cause

---

[2] The District argues that the warranty itself was a negligent misrepresentation, but the warranty was issued after the Eversil 580 coating was purchased and applied. Thus, the District could not have relied on any terms in the warranty in entering into the transaction.

[3] Because there is no evidence of reliance, judgment could also not be entered on the jury's fraud finding. *Grant Thornton LLP v. Prospect High Income Fund,* 314 S.W.3d 913, 923 (Tex. 2010) ("Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance.").

of damages to the District.[4]  In Question 9, the jury found that BaySystems engaged in an unconscionable action or course of action that was a producing cause of damages to the District.

In answer to Question 11, which was conditioned on a "yes" answer to any of the District's three DTPA liability questions—Question 1 (breach of warranty), Question 7 ("laundry list"), and Question 9 (unconscionability)—the jury found damages of $390,000, with the element of damages being the cost to repair the high school roof.  The trial court entered judgment on the DTPA findings in the amount of $390,000.

*DTPA Breach of Warranty*

BaySystems argues that Question 1 presents a *Casteel* problem by including an invalid legal theory—breach of implied warranty—within the DTPA breach of warranty claim.[5]  *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388-89 (Tex. 2000).  We agree.

The jury answered "yes" to Question 1:

Was the failure, if any, of BaySystems to comply with the Warranty a producing cause of damage to Rosebud-Lott?

1. "Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any.  There may

---

[4] "False, misleading, or deceptive act or practice" was defined in the charge as (1) representing that services or goods had or would have characteristics that they did not have; or (2) representing that services or goods are or will be of a particular quality if they were of another; or (3) representing that an agreement or warranty conferred or involved rights, remedies, or obligations that it did not have or involve; or (4) failing to disclose information about goods or services that was known at the time of the transaction with the intention to induce the District into a transaction it would otherwise not have entered into if the information had been disclosed.

[5] The District contends that BaySystems did not object to the charge.  BaySystems submitted an alternative submission of the DTPA warranty liability question (found on page 342 of the clerk's record) that was in substantially correct form (omitting the implied-warranty theory), which the trial court rejected.  This preserved its charge complaint for appeal.  *See Union Pac. R.R. v. Williams,* 85 S.W.3d 162, 170-71 (Tex. 2002); *Elbaor v. Smith,* 845 S.W.2d 240, 244 (Tex. 1992).

be more than one producing cause.

2. "Failure to comply with a warranty" means the following:

   a. Failing to furnish at no charge, all materials, coatings, equipment, and labor necessary to repair any leaks in the Rosebud-Lott High School's roof system;

   b. Failing to perform repairs to the Rosebud-Lott High School roof system in a good and workmanlike manner.

3. "Good and workmanlike manner" is that quality of work performed by one who has knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered made [*sic*] by those capable of judging such work.

4. An "express warranty" is an affirmation of fact or promise made by BaySystems that relates to Rosebud-Lott's roof systems and becomes part of the basis of the bargain. It is not necessary that formal words such as "warrant" or "guarantee" be used or that there be a specific intent to make a warranty.

Answer "Yes" or "No": _____

BaySystems sold goods (the Eversil 580 roof coating), and thus the UCC and its warranty provisions apply to BaySystems's express warranty of its product. *See PPG Industries, Inc. v. JMB/Houston Centers Partners Limited Partnership,* 146 S.W.3d 79, 83 & n.4 (Tex. 2004). BaySystems correctly complains that Question 1 erroneously contains an implied-warranty element: "Failing to perform repairs to the Rosebud-Lott High School roof system in a good and workmanlike manner."

The express warranty disclaims any implied warranties:

THIS WARRANTY IS IN LIEU OF ALL OTHER WRITTEN OR ORAL, EXPRESS OR IMPLIED WARRANTIES AND EVEREST EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE.

*See* TEX. BUS. & COMM. CODE ANN. § 2.316(b) (West 2009); *Southwestern Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576-77 (Tex. 1991). BaySystems did not expressly warrant that it would perform the repairs, or would have the repairs performed, in a good and workmanlike manner; rather, it disclaimed any such implied warranty, and the District agreed to that disclaimer. The submission of Question 1 in this form was harmful error. *See Casteel,* 22 S.W.3d at 381, 388-89.

*DTPA Laundry-list Violations*

Also within issue seven, BaySystems asserts that, as with the negligent misrepresentation claim, there is no evidence of reliance to support the jury finding in Question 7 on DTPA laundry-list violations. *See* TEX. BUS. & COMM. CODE ANN. § 17.50(a)(1)(B) (providing that the "use or employment … of a false, misleading, or deceptive act or practice" must be "relied on by a consumer"); *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 693 (Tex. 2002). We agree. As we held above, the evidence conclusively shows that the District did not rely on any representation by BaySystems in the District's purchase of the Eversil 580 coating. Likewise, there is no evidence that BaySystems induced the District into the transaction to purchase the Eversil 580 coating.

*DTPA Unconscionability*

On similar reasoning, BaySystems further argues that, with regard to the jury's unconscionability finding, there is no evidence that it took advantage of the District. An unconscionable act or practice is one that, to a consumer's detriment, takes advantage of the consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. TEX. BUS. & COMM. CODE ANN. § 17.45(5) (West 2011). The act or practice must

have been committed in connection with the plaintiff's transaction in goods. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 650 (Tex. 1996). We repeat: The evidence conclusively shows that BaySystems had no involvement with Rogers's specification of the Eversil 580 coating or the District's purchase of it in 2000, and BaySystems's alleged conduct relating to the warranty repairs years later and into 2006 cannot have been committed in connection with the District's transaction in 2000. *See id.* at 650-51; *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex. 1985); *Todd v. Perry Homes,* 156 S.W.3d 919, 921-22 (Tex. App.—Dallas 2005, no pet.).

We sustain in part BaySystems's seventh issue. Based on our disposition of issues four and seven, we need not reach issues one and two, which assert that the economic-loss rule bars recovery on the negligent misrepresentation and tort-based DTPA claims.

**Breach of Warranty**

Issue three addresses whether judgment could be entered on the District's separate non-DTPA breach of warranty claim. Sub-issue 3(a) contends that the jury's breach of warranty finding presents the same *Casteel* problem as the DTPA breach of warranty finding. We agree.

*Charge Error*

A separate set of jury questions, nearly identical to the DTPA breach of warranty questions, was submitted to the jury on the breach of warranty claim. Question 14, like Question 1, improperly included an implied warranty to perform repairs in a good and

workmanlike manner.[6] The submission of Question 14 in this form, like Question 1, was harmful error. *See Casteel,* 22 S.W.3d at 381, 388-89. We sustain sub-issue 3(a).

*Warranty Exclusion*

Sub-issue 3(c) asserts that judgment cannot be entered on the breach of warranty finding because the District's claim was expressly excluded by this exclusion in the warranty:

THIS WARRANTY DOES NOT COVER:

…

2. Damage caused by structural movement, failure of the substrate over which coating is applied, faulty construction, or design (of the building).

BaySystems first asserts that because the high school roof's foam substrate failed—having undergone reversion—this unambiguous exclusion applies. Based on the record before us, we disagree that the exclusion is unambiguous in that respect. The experts disagreed on whether the roof's substrate consisted of the reverted foam coating only (BaySystems's view) or all of the roof's various layers (the District's view).

BaySystems next argues that the exclusion applies because of "faulty design," pointing to Rogers's faulty engineering in his improper specification of the Eversil 580 coating on the reverted foam roof. The exclusion is either ambiguous or inapplicable in that respect, as it excludes "faulty … design (of the building)." We thus overrule sub-issue 3(c).

---

[6] To preserve this charge complaint, BaySystems submitted an alternative submission of the warranty liability question (found on page 337 of the clerk's record) that was in substantially correct form (omitting the implied-warranty theory), which the trial court rejected.

*Warranty Compliance*

Sub-issue 3(d) asserts that judgment could not be entered on the breach of warranty finding because BaySystems complied with the warranty. Several times in its brief BaySystems states that it had the leaks repaired every time that it was notified of them, but the brief does not contain argument on this sub-issue, nor does it identify the basis (*e.g.,* legal insufficiency) on which we would sustain it. *See* TEX. R. APP. P. 38.1(i). We overrule sub-issue 3(d) as inadequately briefed.

## Limitations

In sub-issue 3(b) and issue 10, BaySystems asserts that all of the District's claims are barred by the applicable statutes of limitations as a matter of law. Because of our above dispositions, we need only consider the District's DTPA and non-DTPA breach of warranty claims.

The statute of limitations for a DTPA breach of warranty claim is two years. TEX. BUS. & COMM. CODE ANN. § 17.565 (West 2011); *McAdams v. Capitol Prod's. Corp.,* 810 S.W.2d 290, 292 (Tex. App.—Fort Worth 1991, writ denied), *overruled on other grounds by Lorentz v. Dunn,* 171 S.W.3d 854 (Tex. 2005). The statute of limitations for a breach of warranty claim is four years. TEX. BUS. & COMM. CODE ANN. § 2.725(a), (b) (West 2009); *see PPG,* 146 S.W.3d at 92-93.

Because BaySystems had the burden of proof on its limitations defense, it must demonstrate that the evidence establishes conclusively, *i.e.,* as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001). In reviewing the jury's verdict for the legal sufficiency of the evidence, we

consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005). Thus, we must credit favorable evidence for the District if reasonable jurors could, and disregard evidence contrary to the jury's finding. Moreover, we must not substitute our opinion on witness credibility for that of the jury. *Id.* at 816-17.

The District filed suit on March 5, 2007. The trial court submitted two separate limitations questions for the DTPA breach of warranty claim and for the breach of warranty claim. In the second set of questions, Question 3 (the DTPA breach of warranty claim) asked the jury to find the earliest date that the District knew or should have known that BaySystems would not repair the roof in accordance with the warranty. Question 16 (the breach of warranty claim) was identical. The jury answered October 4, 2006 for each question.[7]

The District argues that, because its breach of warranty claim is that BaySystems breached its express warranty to repair the roof, the second question and the October 4, 2006 date applies. We agree with the District, given the pleading of its breach of warranty claims in its Fourth Amended Petition. For its DTPA breach of warranty claim, the District pleaded that "after [the District] provided [BaySystems] with notice

---

[7] In the first set of questions, Questions 2 (DTPA breach of warranty) and 15 (breach of warranty) were identical. In Question 2 the jury found that July 21, 2006 was the earliest date that the District knew or should have known of enough leaks to indicate that the problem was not isolated. The jury was instructed that the required knowledge does not arise when the first leak is discovered, nor does it require that all leaks are known. *See PPG*, 146 S.W.3d at 94 (stating the applicable discovery rule ends when "an owner knows of enough leaks to indicate the problem is not isolated"). The jury answered July 14, 2006 in answer to Question 15.

We express no opinion on the propriety of the limitations questions and instructions.

of each such leaking roof systems, [BaySystems] has failed to repair such roof systems to make them watertight, therefore breaching its express warranty." For its non-DTPA breach of warranty claim, the District pleaded that the "repair services provided by [BaySystems] in response to the notices of leaks did not comply with [Baysystems's] written representation to repair [the District's] roof systems so they would be watertight, which was a breach of [BaySystems's] express warranty."

In a case for breach of an express warranty to repair, the breach occurs, and the statute of limitations begins to run, when further repairs are refused. *See The Austin Co. v. Vaughn Building Corp.,* 643 S.W.2d 113, 115-16 (Tex. 1982); *see also PPG,* 146 S.W.3d at 96.

The evidence shows that there were reported leaks in 2002 and 2004 and that BaySystems had those leaks repaired. The evidence further shows that there were then more leaks, and in July 2006, Brazos Urethane was sent to attempt to repair the roof but did nothing because, as one of its employees stated, the roof was "hopeless." The District then hired Brian Gardiner, a roofing expert, to inspect the roof, and he told the District that the roof had hundreds of holes. The District's superintendent then sent BaySystems a letter dated October 4, 2006 informing BaySystems that the attempted repairs had failed and that BaySystems was not satisfying its obligations under the warranty.

Viewing this evidence in the light most favorable to the District, we cannot say that the evidence conclusively establishes that BaySystems's alleged breach of warranty occurred, and the District's breach of warranty claim accrued, more than two and four

years before March 5, 2007, the date the District filed suit. We overrule sub-issue 3(b) and issue 10.

Given our disposition, we need not address BaySystems's remaining issues.

## Conclusion

We reverse the trial court's judgment and remand the District's breach of warranty and DTPA breach of warranty claims for a new trial. *See Casteel,* 22 S.W.3d at 390.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs in the judgment remanding the case for a new trial. A separate opinion will not issue. He notes, however, that because the limitations issues were conditionally submitted based upon the jury's answer to breach of warranty issues that we have determined to be defective, we need not, and should not, review the limitations questions. Because the limitations issues, based upon the facts, are intertwined with and dependent upon what the jury determines with regard to the warranty and its breach, if any, BaySystems should be allowed to retry those issues in the new trial of the breach of warranty claims.)
Reversed and remanded
Opinion delivered and filed December 21, 2011
[CV06]