Steven A. PARKS, et al., Appellant,

v.

U.S. HOME CORPORATION, Appellee.

No. 01–82–0871–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 7, 1983.

Rehearing Denied May 26, 1983.

Dale W. Felton, Missouri City, for appellant.

Patricia Hair, Houston, for appellee.

Before WARREN, BULLOCK and BASS, JJ.

## OPINION

BASS, Justice.

This is an appeal from the denial of an application for a temporary injunction.

The judgment is affirmed.

Appellants, Parks and twenty-four other homeowners, filed their original petition alleging that they had purchased homes in Westbranch Village from appellee, U.S. Home Corporation. Appellants alleged that appellee's sales agent, Wilmeth, had represented to them that all remaining homes in Westbranch Village would be of the same price range ($89,950 to $100,950) and Victorian style, and that they had relied on such representations.

Appellants further alleged that after they had purchased their homes appellee's agent informed them that appellee did not intend to construct homes of the same price range and Victorian style on the remaining lots in Westbranch Village. Appellants complained that the lower priced homes would seriously diminish or destroy the market value of their homes.

Appellants contended that all property is unique, and that "one of the characteristics of the uniqueness of each piece of property is the nature and use of adjacent and nearby property and the value of the improvements thereon." They alleged that part of the consideration for which they paid the purchase price was the "representation, affirmation, and guarantee" by appellee, through its agent, that Westbranch Village would be completed with homes of the same style and price range as those they had purchased.

Appellants alleged that the appellees had violated § 17.46(b)(23) of the Deceptive Trade Practices Act, in that at the time of closing the sale to appellants, appellee knew that it did not intend to comply with its representations. They further alleged that failure to disclose this information induced appellants to purchase their homes and, thus, constituted a false, misleading, or deceptive act or practice under the DTPA.

They alleged that appellee had also violated § 17.46(b)(5) of the Deceptive Trade Practices Act, in that appellee clearly and unequivocally represented and guaranteed that the homes purchased by appellants

would be located in a subdivision made up of homes of the same style and price range. They alleged that the appellees had, therefore, represented that the homes purchased by appellants had characteristics, benefits, or qualities which they did not, in fact, have.

Appellants further contended that appellee had violated § 17.50(a)(3) by following an unconscionable action or course of action (the proposed building of lower priced homes in Westbranch Village) which would cause the value of appellants' homes to be seriously diminished or destroyed, and which would result in a gross disparity between the value of their homes and the consideration paid.

Appellants alleged that they had no adequate remedy at law for the damage done or threatened by appellee, because the real property involved was unique. They alleged that monetary damages were therefore wholly inadequate, and prayed for both temporary and permanent injunctions enjoining appellee from constructing homes in Westbranch Village selling for less than $89,000.

Appellee answered by way of general denial.

The temporary injunction hearing was held on October 13, 1982, at which the following evidence was introduced:

Appellants were led to appellee's subdivision by billboard advertisements stating "Westbranch Village—Victorian Homes, from the '80's." Appellants dealt solely with appellee's sales agent, Ms. Rosie Wilmeth, whose business card was entitled, "Westbranch Village—Home of the Victorian." Three models of Victorian homes were available, ranging in price from $89,950 to $100,950.

Ms. Wilmeth told appellants that on each lot in the area designated on her sales map as "Westbranch Village" there would be constructed one of the three Victorian models. She stated that no lesser-priced home, or style other than the three Victorian models, would be constructed in Westbranch Village. Ms. Wilmeth admitted that she had made such representations, but denied that she had made any "guarantees." Appellants testified that they would not have purchased their homes but for the representations.

Ms. Wilmeth admitted that she had been informed of appellee's change of plans as of August 31, 1982, prior to several closings, but failed to inform appellants of this fact because she "didn't think it was important." Although she asserted that she would have informed appellants, had they asked, appellants offered testimony that on at least one occasion she failed to disclose such information after direct inquiry.

Appellants testified that they were concerned that their property values would decline and that the character of the neighborhood would change, should lesser priced homes of another style be built around their homes. However, appellee's representatives testified that there was nothing unique about the lots located in Westbranch Village, and no one passing from the other section of the subdivision into Westbranch Village would be aware of any differentiation. The discontinuation of the construction of the Victorian models had not diminished the asking price for those Victorian homes not yet sold, nor had it caused a change in the character of the subdivision. Appellee's representatives further testified that Westbranch Village had not been planned as a Victorian home community in order to create or enhance property values, but that, in fact, the only reason Westbranch Village had been designated as the location for the Victorian models had been to avoid confusion among appellee's sales people at its two sales offices.

Appellee's representative Dennis Bailey, Division President, testified that continuing to build the Victorian home product line would result in monthly losses of $30,000.00 over a four year period. Total cessation of construction in Westbranch Village would result in yearly losses of $250,000.00 in interest payments. Mr. Bailey testified that only residences selling for at least $70,000.00 would be built in Westbranch Village.

At the close of the evidence, the trial court entered its order denying the application for temporary injunction. The order contained the following findings of fact and conclusions of law:

(1) Defendant erected a billboard which stated that homes in the Westbranch Village would consist of homes from the $80's.

(2) Oral statements were made by defendant or its representative to the plaintiffs that homes within Westbranch Village would consist of homes with a sales price of at least $80,000 and be constructed only with a Victorian front elevation.

(3) Plaintiffs relied on such statements when they purchased their homes.

(4) Defendant has since changed its position and now intends to build homes in the subject area with a sales price of less than $80,000 but not less than $70,000 and with a front elevation consisting of styles in addition and different than Victorian.

(5) There exist no deed restrictions pertaining to the subject property at all relevant times which required defendant to build only homes (i) at sales price of not less than $80,000 and (ii) with Victorian style front elevations.

(6) Plaintiffs failed to meet their burden of proof that irreparable harm will be caused by defendant's action if not abated by a temporary injunction, or that plaintiffs were entitled to a temporary injunction as a matter of law.

(7) Any harm or damage, if any, caused by defendant to plaintiff could be compensable in damages, if any, because the defendant was financially solvent and one of the largest home builders in the nation.

Appellants requested the following additional findings of fact:

(1) Each of the plaintiffs purchased one of three (3) models shown to them by the defendant's representative.

(2) As of July 19, 1982, the sales price of the smallest of the three (3) models shown to plaintiffs was $89,950.

(3) Defendant or its representative made oral statements to the plaintiffs that all of the homes to be built in Westbranch Village would be of the same price and style as the three (3) models shown to plaintiffs.

(4) Plaintiffs would not have purchased their homes from the defendant had the defendant or its representative disclosed that lesser priced homes than the three (3) models shown to plaintiffs would be built throughout the remainder of Westbranch Village.

(5) One characteristic or quality of a home is the size, price, and style of other homes built nearby in the same subdivision.

(6) If the defendant constructs homes throughout the remainder of Westbranch Village of a lower price and of a different style than the models shown to plaintiffs, the homes purchased by plaintiffs would not have a characteristic or quality as represented by the defendant.

The court refused all requested findings except numbers one and four.

Appellants assert three points of error on appeal, and consolidate them in their argument:

(1) The trial court abused its discretion as a matter of law in denying the temporary injunction because appellants showed a probable right to injunctive relief and a probable injury.

(2) The trial court abused its discretion as a matter of law because it failed to apply the law correctly to the undisputed facts.

(3) The trial court abused its discretion in apparently basing the denial of the temporary injunction on the fact that appellants have an adequate remedy at law in damages.

■ Appellants contend, as an initial matter, that they have standing as "consumers" to sue under the Texas Deceptive Trade Practices Act (DTPA), because the Act applies to consumers of new homes, citing *Norwood Builders, Inc. v. Toler,* 609 S.W.2d 861 (Tex.Civ.App.—Houston [14th Dist] 1981, writ ref'd n.r.e.), as authority. Appellee disputes this assertion. It contends that appellants have no standing to

complain of the use to be made of property which they have not purchased.

It seems clear that appellants have standing to bring suit under the DTPA as "consumers" of "goods," as they complain specifically that misrepresentations were made to them which induced them to purchase their homes and lots. The Supreme Court stated, in *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981), that to qualify as a consumer under the Act, the person must have sought or acquired goods by purchase or lease, and the goods purchased or leased must form the *basis* of the complaint. Real property was included in the definition of "goods" in § 17.45(1) Tex. Bus. & Com.Code Ann. (Vernon 1982), by amendment effective as of September 1, 1975.

While appellee strenuously asserts that the *basis* of appellants' complaint is not the homes and lots actually purchased, it appears that the DTPA was intended to reach appellants' complaints. The Supreme Court, in *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977), stated that the Act "clearly declares deceptive practices in the *conduct* of a real estate sale to be unlawful" (emphasis added). Moreover, § 17.44 Tex.Bus. & Com.Code Ann. (Vernon 1982), states that the DTPA

> shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty, and to provide efficient and economical procedures to secure such protection.

See also *Rinehart v. Sonitrol of Dallas, Inc.,* 620 S.W.2d 660 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

Appellants specifically contend that they have proved a probable right to recovery under both § 17.46(b)(5) and (23) Tex.Bus. & Com.Code Ann. (Vernon 1982), and that under § 17.50(b)(2) they are entitled to injunctive relief. They contend that the trial court's findings of fact support their right to recovery as a matter of law.

Section 17.46(b)(5) makes it a deceptive trade practice to represent that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have. *Intentional* misrepresentation is not required to show a violation of this subdivision, so long as the misrepresentation is not mere "puffing." See *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980), and *Smith v. Baldwin,* 611 S.W.2d 611 (Tex.1980). It is not at all clear, however, that the use to be put to contiguous or surrounding property is a "characteristic or quality" of appellants' home and lot. No cases have addressed misrepresentations regarding use of surrounding property in a cause of action based on § 17.46(b)(5) of the DTPA since real estate purchases have come within its purview. Contrary to appellants' assertion, the court in *Ratcliff v. Trenholm,* 596 S.W.2d 645 (Tex.Civ.App. Tyler 1980, writ ref'd n.r.e.), did not address the issue or provide any guidance for this court.

The trial court in the case at bar specifically refused to adopt appellants' requested finding of fact that "one characteristic or quality of a home is the size, price, and style of other homes built nearby in the same subdivision." It did, however, find that no deed restrictions exist pertaining to price and style of homes in the subdivision.

In view of the case law interpreting "characteristic" or "benefit," we hold that appellants' particular complaint is not within the purview of § 17.46(b)(5). To date, "characteristic" or "benefit" has only been interpreted to refer to attributes of the goods actually purchased. See, e.g., *Pennington, supra.*

Appellants' contention that they are entitled to relief under § 17.46(b)(23) is likewise ill-founded. They assert that appellee's sales agent intentionally failed to disclose appellee's change in development plans, and that this nondisclosure induced appellants to purchase their homes.

However, as appellee points out, § 17.46(b)(23) prohibits:

> The failure to disclose information concerning goods or services which was

known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Appellee stresses that the undisclosed information must be *known* to the participant withholding such information, and that the failure to disclose must be *intended* to induce the purchase.

■■ In this case the evidence as to the reason for the failure to disclose was sharply disputed. The trial court, as trier of fact, was the judge of the credibility of the witnesses and the weight to be given their testimony. This court, in reviewing the evidence, is required not only to give effect to the findings as made, but also to presume omitted findings in support of the judgment, if such findings are supported by the evidence. *Kroger Co. v. Warren,* 420 S.W.2d 218 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ). There was evidence from which the trial court could have found that the nondisclosure was not motivated by intent to induce the purchase, and, thus, that appellants did not sustain their burden of proof under § 17.46(b)(23).

■ The grant or denial of a temporary injunction is within the sound discretion of the trial court. This court, in reviewing the trial court's decision, is limited to consideration of whether or not the trial court clearly abused its discretion. *Western Hills Theaters v. Motion Picture Machine Operators Local § 330,* 495 S.W.2d 39 (Tex. Civ.App.—Fort Worth 1973, no writ). "Abuse of discretion" implies more than an error of judgment; it must amount to "arbitrary and unreasonable" action by the trial court. *Bennett v. Northcutt,* 544 S.W.2d 703 (Tex.Civ.App.—Dallas 1976, no writ). In determining whether there has been an abuse of discretion, the Court of Appeals is required to view the evidence in the light most favorable to the action of the trial court, and indulge every legal presumption in favor of the judgment.

■ In order to obtain injunctive relief, the applicant must show a substantial likelihood of success on the merits, a substantial threat of irreparable injury, that the threatened injury to the applicant outweighs the threatened harm the injunction may cause to the defendants, and that the granting of the injunction will serve the public interest. *Bean v. Southwestern Waste Management Corp.,* 482 F.Supp. 673 (1979); *Arkansas Louisiana Gas Co. v. Fender,* 593 S.W.2d 122 (Tex.Civ.App.—Tyler 1979, no writ). These factors must also be established in order to obtain injunctive relief under § 17.50(b)(2) Tex.Bus. & Com. Code Ann. (Vernon 1982). See *Woods v. Littleton, supra; Wesware, Inc. v. State of Texas,* 488 S.W.2d 844 (Tex.Civ.App.—Austin 1972, no writ).

■ The trial court found that appellants failed to meet their burden of proof that they were entitled to a temporary injunction as a matter of law. Implied in that finding was the determination that appellants had not shown a substantial likelihood of success on the merits. Because there was evidence upon which the trial court could have based such a finding, it did not abuse its discretion in denying the application for a temporary injunction.

With regard to appellants' contention that the trial court abused its discretion in finding that appellants could be adequately compensated in damages, appellants urge that where real property is concerned, an action for damages is not an adequate remedy. They further assert that the representations constituted oral deed restrictions which may be enforced by means of injunction without the necessity of proving amount of damages or irreparable injury. They rely upon *Protestant Episcopal Church Council v. McKinney,* 339 S.W.2d 400 (Tex.Civ.App.—Eastland 1960, writ ref'd), and *North Texas Trust Co. v. Brittson,* 279 S.W. 892 (Tex.Civ.App.—Dallas 1926, writ dism'd), as authority.

■ Appellants err in claiming that the simple fact that real property is involved mandates injunctive relief. As the court held in *Crestview Ltd. v. Foremost Ins. Co.,* 621 S.W.2d 816 (Tex.Civ.App.—Austin 1981,

writ ref'd n.r.e.), the applicant must show a probable right and a probable injury before injunctive relief will be available.

 Appellants also err in asserting that the oral representations made in this case constitute deed restrictions which must be enforced by injunction. The court in *North Texas Trust Co., supra,* stated that

> where the owner of land, by a map or by other unequivocal acts or declarations, indicates that a particular lot or plot is to be dedicated or reserved to or for a particular use *of a public or quasi public character,* those who are thus induced to purchase lots in an addition take, as appurtenant, every advantage, privilege, and *easement* which was represented as belonging to or as a part of the same (emphasis added).

The critical fact in that case was the public or quasi-public nature of the dedication, a block to be used as the site of a community or civic center. The dedication created an easement, which irrevocably vested rights in the lot purchasers and, through them, in the public. The purported oral deed restrictions in the instant case do not vest any rights in appellants by virtue of a public or quasi-public use.

 In light of the evidence adduced at the hearing, the trial court did not abuse its discretion in determining that damages would adequately compensate appellants, should they prevail on the merits. Appellants stressed their concern about diminished market value of their homes due to appellee's threatened conduct. Appellants introduced no evidence of demonstrated or potential loss on their part. They simply testified that they feared decline in the market value of their homes. Evidence introduced at trial tended to refute the likelihood of diminished value or change in the character of the neighborhood.

Furthermore, in balancing the harm which would ensue to appellants should an injunction not be granted, with the harm which would ensue to appellee should an injunction be granted, the trial court had evidence before it from which it could have concluded that harm to appellee outweighed any harm appellants might suffer. Appellee demonstrated potential loss of at least $30,000 per month during cessation of construction, while, as stated above, appellants failed to introduce any evidence of potential loss.

The trial court did not abuse its discretion in denying the temporary injunction.

Appellant's three points of error are overruled.

The judgment of the trial court is affirmed.