**In the Matter of M.D.B., Jr.**

No. A14–87–374–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 14, 1988.

Xavier E. Grenas, Sandra K. Williams, Houston, for appellant.

Elliott Knott, Liberty, Lloyd D. Stansberry, Alvin, Jim Turner, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

OPINION

MURPHY, Justice.

M.D.B., Jr., a juvenile, appeals from an order of the Brazoria County Court, acting as juvenile court, waiving its jurisdiction and transferring him to the district court for criminal proceedings. Appellant raises

three points of error. We affirm the lower court's order.

On January 12, 1987, the criminal district attorney for Brazoria County filed a petition for waiver of jurisdiction and discretionary transfer in county court, sitting as juvenile court, to pursue criminal proceedings for capital murder against M.D.B., Jr., in district court. Because M.D.B., Jr. was fifteen years old when he allegedly committed the offense, the state sought the court's permission for transfer pursuant to Tex.Fam.Code Ann. § 54.02 (Vernon Supp.1988). In its petition the state alleged, among other things, that on or about November 17, 1986, M.D.B., Jr., age 15, murdered Cathy Lynn O'Daniel in the course of committing the aggravated offenses of sexual assault, kidnapping and robbery. The state's petition also addressed the remaining requirements dictated by the Family Code for discretionary transfer of a juvenile. Appellant responded by filing a Suggestion of Mental Retardation and Motion for Comprehensive Diagnosis. The court ordered a diagnostic social study and investigation by a Dr. Malone. Following the results of this court ordered testing, the appellant filed a Suggestion of Mental Illness and a Motion for Temporary Hospitalization. Pursuant to Tex.Fam.Code Ann. § 55.02 (Vernon 1986), the court stayed the hearing for waiver of jurisdiction and initiated proceedings to determine the need for temporary hospitalization of M.D.B. Section 55.02 reads:

> If it appears to the juvenile court, on suggestion of a party or on the court's own notice, that a child alleged by petition or found to have engaged in delinquent conduct or conduct indicating a need for supervision may be mentally ill, the court shall initiate proceedings to order temporary hospitalization of the child for observation and treatment.

The hearing on the matter of appellant's need for hospitalization was held before a jury which heard testimony from appellant's chosen doctor, the court ordered doctor and the state's doctor. After hearing testimony from all of the doctors and a Brazoria County Juvenile Detention Center officer, the jury determined, by answering special issues, that M.D.B. was mentally ill. Subsequent to the jury's finding, the court directed the juvenile department to commence a search for an appropriate facility for treatment of M.D.B.

The record shows that the facility initially chosen for treatment was Austin State Hospital. From there, however, appellant was transferred to the maximum security unit of Rusk State Hospital, where, purportedly, the appellant was thoroughly examined, both physically and psychologically. As a direct result of the State Hospital's findings, appellant was returned to the custody of the court. Despite appellant's objection, the trial court then proceeded with the hearing on certification and waiver of jurisdiction.

Appellant's first point of error attacks the Brazoria County Court acting as Juvenile Court, for abuse of discretion in waiving its jurisdiction and transferring appellant to the Brazoria County District Court for criminal proceedings.

The statute governing waiver of juvenile court jurisdiction over a child, § 54.02 of the Family Code, sets out three mandatory requirements in subsection (a) inquiring whether:

> (1) the child is alleged to have violated a penal law of the grade of felony;
>
> (2) the child was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and
>
> (3) after full investigation and hearing the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings.

In addition, the court must obtain a complete diagnostic study, social evaluation and full investigation of the child, his circumstances, and the circumstances of the alleged offense. Finally, subsection (f) of § 54.02 requires the juvenile court, when

making the determination, to consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court. § 54.02(f).

█ The discretionary transfer hearing is not held for determining guilt or innocence. Instead it is held for the purpose of establishing whether the child's and society's best interests are met by maintaining juvenile custody of the child or by transferring him to a district court for adult proceedings. *B.L.C. v. State*, 543 S.W.2d 151 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Importantly, § 54.02 mandates that the trial court make only the three findings cited above from subsection (a). Once it is established by the trial court that the child was 15 years of age when he allegedly committed the felony offense, and after a full investigation indicates probable cause exists to believe the child actually did commit the offense, the state is charged with presenting some evidence of probative value on the factors to be considered by the court under § 54.02(f). It is thereafter the function of the court to exercise its discretion in determining whether or not to certify the juvenile to stand trial as an adult. *Moore v. State*, 713 S.W.2d 766, 768 (Tex.App.—Houston [14th Dist.] 1986, no writ.). Importantly, while the juvenile court is required to consider all six factors of § 54.02(f) as cited above, it is not

required to find that each factor is established by the evidence. 713 S.W.2d at 768.

Appellant has no dispute with the trial court's finding regarding his age and the gravity of his alleged offense. However, he argues that the remaining findings and waiver of jurisdiction by the juvenile court constitute "textbook examples of a court exercising unlimited discretion to the point of patently abusing the discretionary powers granted by § 54.02." In reviewing the trial court's action for an abuse of discretion, this court must determine if the trial court acted without reference to any guiding rules and principles. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex. 1986).

The first finding complained of by appellant is the finding that the offense was committed in an "aggravated" and premeditated manner. We assume the appellant is referring to the court's finding in the language of the statute of "aggressive" manner. Here, the appellant focuses on testimony by Edwin Kroschel, a detective from the Harris County Sheriff's Department. Essentially, Kroschel admitted that while it was his opinion that the crime was committed in an aggressive and premeditated manner, this conclusion was not based on any personal understanding or knowledge of M.D.B., Jr., psychologically or otherwise. Additionally, appellant claims that there was no evidence in the record to support a finding that the alleged offense was premeditated. The appellant relies on testimony from his psychologist, Dr. Seth Silverman, on the subject of intent and malicious behavior. Silverman testified that he did not consider M.D.B., Jr., to be malicious because he lacked the requisite intent in his behavior. At best, we find appellant's argument unconvincing.

█ This court has held that aggressiveness can be inferred from the act which constitutes the charged offense. *See Moore v. State*, 713 S.W.2d at 769. In *Moore* we held that striking a person with a police baton was an aggressive act. We also found that during the relatively short period in which Moore was chased by the police officer, he had time to contemplate

his attack upon the officer and form the requisite intent. This allowed a finding of premeditation. Furthermore, in *In re I.B.*, 619 S.W.2d 584, 587 (Tex.Civ.App.—Amarillo 1981, no writ.) the court concluded that "a premeditated design can be legally formulated in an instant ..." In this case, the facts indicate that the appellant and his companion drove with the victim in her vehicle before sexually assaulting her and ultimately killing her. We conclude that it is reasonable to infer from the evidence of the offense that it was carried out in an aggressive and premeditated manner.

The appellant further asserts that the trial court's finding of "[t]he unlikelihood of the rehabilitation of the Juvenile-respondent by use of procedures, services and facilities currently available to the Juvenile Court" was unsupported by the evidence. His entire argument for this assertion is, essentially, that the evidence in the trial court did not show that all the available facilities in the state had been considered for his treatment. As we said in *Moore:*

> In a discretionary transfer proceeding, there is no requirement of proof concerning procedures, services, and facilities available to the court for the juvenile's rehabilitation because whatever resources are available would be within the courts knowledge without need of proof. 713 S.W.2d at 770.

The letter sent to the court following appellant's physical and psychological testing at Rusk State Hospital set forth in pertinent part that the child had no treatable illness. M.D.B., Jr., was only transferred to Rusk State Hospital after Austin State Hospital's Institutional Review Board released him, finding that he was manifestly dangerous. The alleged offenses, taken with the trial court's knowledge of which facilities and procedures are available support the court's finding of the unlikelihood of rehabilitation.

Finally, appellant attacks the court's finding that "because of the seriousness of the offense and the background of the Juvenile–Respondent, the welfare of the community requires criminal proceedings." Appellant incorrectly argues that no inves-

tigation into appellant's background or living conditions was conducted. The court ordered an investigation into the social history of M.D.B., Jr. Jack Singleton, a probation officer for Brazoria County, produced a report of such an investigation after interviewing M.D.B.'s custodial grandparents (both of his parents are deceased) and a Texas Youth Commission caseworker, familiar with M.D.B., Jr.'s history. The report reflected M.D.B., Jr.'s living conditions at the home of his grandparents, his past disruptive behavior in school, his prior criminal activity which included theft, burglary, and indecency with a child, and the present alleged criminal offense. Although it is not necessary for a juvenile court to find all of the factors listed in § 54.02 of the Family Code to be established, we find that the evidence was sufficient to establish all the findings the court did make.

■ Appellant's last two points complain that the trial court violated article 5547-1, et seq., Texas Mental Health Code, and abused its discretion in denying appellant his statutory right to treatment for mental illness. The appellant argues that because a competency hearing was held and a jury found that he was mentally ill, the failure of the court to send him to a facility which could effectively treat him was error which resulted in a denial of his right to treatment. In order to reach this conclusion appellant makes several assertions without citing supporting authority. Specifically, the appellant insists that the language found in Tex.Rev.Civ.Stat.Ann. art. 5547-50(e) (Vernon Supp.1988), mandates that the trial court "shall consider the recommendation for the most appropriate treatment alternative ..." as designated by the Commissioner of Mental Health and Mental Retardation. Here, the appellant points out, the trial court did not request nor did it receive any such recommendation. In his brief, appellant states that "no notice of the imminent hearing on mental illness was given to the Commissioner of Mental Health and Mental Retardation so that he could designate a facility or provider that would submit such recommendation. The Juvenile Court obviously felt such notifica-

tion was the duty of Appellant's counsel." He continues with his argument by asserting that the record reflects the court made its choice of a treatment facility without any real guidance.

Initially, we note that any failure by the trial court to comply with art. 5547-50(e), was never brought to that court's attention. We do not agree with the implied assertion that such omission by the court was fundamental error and therefore not waived by appellant's failure to object. The state astutely points out that the Mental Health Code's provision calling for MHMR's recommendation must be construed within the context of an application for mental health services. The motivating factor for holding the hearing in appellant's case was the pending certification proceedings. The state sought to have M.D.B., Jr., held responsible as an adult because of, among other factors, the serious nature of the offense. The appellant's desire for mental health treatment in this instance must be considered along with the ever present concern in the Mental Health Code for the public safety. The balance between what can become competing interests was expressed in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). In appellant's case the only appropriate treatment facility must necessarily have maximum security and control. Austin State Hospital, the original treatment facility appellant was sent to, and the facility appellant's doctor recommended, did not consider itself adequately secure. After appellant was transferred to Rusk an apparent battery of physical and psychological tests were run on him. As already noted, the hospital staff determined that appellant did not have a treatable condition.

We also note from the record that at the conclusion of the competency hearing, after the jury had delivered its findings, the court announced its intent to instruct the juvenile department to commence a search for an appropriate treatment facility. At that time appellant did not state any objection or move the court for a recommendation from M.H.M.R. Appellant has waived this point.

Finally, we find no absolute statutory right to treatment for the mentally ill. Appellant's selective quote from Tex.Rev.Civ. Stat.Ann. art 5547-80(b)(1) (Vernon Supp. 1988), does not properly characterize the purpose and meaning of that section or the code. The entire provision appellant cites from, reads:

> All patients receiving mental health services pursuant to the provisions of this code have the following rights: (1) to appropriate treatment for their mental illness *in the least restrictive appropriate setting available consistent with the protection of the patients and the community;* ... [emphasis added].

Art. 5547-80(b)(1).

The emphasized portions of the cited language represent the additional factors of consideration found in the code which affect an individual's right to treatment. If an individual has not committed a crime, the state may not order his confinement for mental illness without also treating him. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). If treatment is ordered for an individual who is not dangerous to himself or the community, it should be in the least restrictive environment. *Id.* at 575, 95 S.Ct. at 2493.

The state correctly points out that the "thrust" behind the right to treatment is to minimize the state's intrusion on the individual's liberty. Additional considerations for the right to treatment include the community's safety and security. For this, Rusk State Hospital was a logical choice. Although we do not necessarily endorse the extremely short period Rusk kept the appellant, presumably the proper officials at that facility determined that the scheduled 90 day period of internment was unnecessary because M.D.B., Jr., had no treatable mental illness. They therefore ordered him to be returned for proceedings with the court. We do not find M.D.B., Jr.'s, rights were violated by this determination.

The order of the trial court is affirmed.