**Tommie Sun SIMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00890–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 22, 1991.

Rehearing Overruled Sept. 19, 1991.

Helen M. Malveaux, Houston, for appellant.

Bill R. Turner, Brazos County Dist. Atty., for appellee.

Before PRICE,[1] COHEN and WILSON, JJ.

## OPINION

PRICE, Justice (Assigned).

This is an appeal from court-ordered extended mental health services, TEX.REV.CIV. STAT.ANN. arts. 5547–51(b), 5547–57 (Vernon Supp.1991), under the Texas Mental Health Code.[2] We affirm.

Appellant, Tommie Sun Sims, is an 80–year–old man who suffers from a progressive disease called organic brain disorder. On January 12, 1987, appellant was charged by felony information with attempted murder and aggravated assault with a deadly weapon (the alleged offense is referred to as "the shooting incident"). On January 16, 1987, his attorney requested a mental health examination. The examination revealed a mental deficiency. On February 25, 1987, a jury found appellant incompetent to stand trial, but also found that there was a substantial probability he would regain competency to stand trial in the foreseeable future. Appellant was committed to Rusk State Hospital for a period of at least 60 days, but not to exceed 18 months. The court ordered the hospital personnel to report every 40 days on appellant's progress toward achieving competency.

In June 1987, the hospital personnel sent appellant back to the court for a commitment change because his treating physician, Dr. Srinivasan, did not believe appellant would ever become competent. As a consequence, there was a second competency trial on July 16, 1987, where a jury found appellant mentally incompetent, mentally ill, and requiring hospitalization. The trial court, on July 20, 1987, committed appellant to Rusk State Hospital for an

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

2. TEX.REV.CIV.STAT.ANN. art. 5547–1 (Vernon Supp. 1991).

indefinite period, and ordered the hospital personnel to report every 90 days on his progress. In September 1987, appellant was transferred to Austin State Hospital.

In November 1989, Dr. Bayliss, a member of the Austin State Hospital psychiatric treating team, notified the trial court that appellant had regained his competency for trial purposes and no longer needed to remain at Austin State Hospital. On March 16, 1990, the matter of appellant's competency was again presented to the jury. The jury found appellant incompetent to stand trial and that there was no substantial probability he would be competent in the foreseeable future. Additionally, the jury found appellant was mentally ill and required treatment. The trial court committed appellant back to Austin State Hospital for a period of 12 months, and ordered the hospital personnel to report every 90 days on his progress.

Appellant challenged this commitment on June 8, 1990, when he filed an application for writ of habeas corpus claiming the trial court instructed the jury to apply the incorrect standard for evaluating the evidence. The trial court directed the jury to evaluate the evidence using the "preponderance of the evidence" standard instead of the "clear and convincing evidence" standard as required by statute.[3]

After granting the relief requested, the trial court, on September 10, 1990, commenced another trial to determine whether appellant met the criteria for court-ordered extended mental health services. The jury found, by clear and convincing evidence, that appellant (1) is mentally ill, (2) is likely to cause serious harm to himself and others, (3) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and to experience deterioration of the ability to function independently, (4) is unable to make a rational and informed decision to submit to treatment, and (5) will continue in such condition for more than 90 days. Based on the jury's findings and on additional evidence for alternative placement settings, the trial court recommited appellant to Austin State Hospital.

■ In his first point of error, appellant contends that the trial court erred in denying his motion in limine to exclude any reference to the shooting incident because (1) the incident was not a recent overt act or part of a continuing pattern of behavior and (2) the incident's probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues before the jury.

Before trial, appellant filed a motion in limine to prevent any reference to his shooting Shirley Mae Mitchell on January 2, 1987. The felony information charging appellant with attempted murder and aggravated assault is based on this incident. The trial court denied the motion.

■ The purpose of a motion in limine is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury. *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963). A motion in limine merely precludes reference to the subject of the motion without first obtaining a ruling on the admissibility of those matters outside the presence of the jury. *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.*, 715 S.W.2d 658, 662 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Although the overruling of a motion in limine may be error, it is never reversible error. *See McCardell*, 369 S.W.2d at 335. If a motion in limine is improperly overruled, a judgment will not be reversed unless the questions or evidence were asked or offered. *Id.* However, in order to preserve the right to complain on appeal, a timely objection must be made when the question is asked or the evidence offered. *Id.*

In the present case, appellant did not timely object to Shirley Mae Mitchell's testimony describing the shooting incident and the events that led up to it. Thus, any error is waived as nothing is preserved for review. TEX.R.APP.P. 52(a).

---

3.  Under article 5547–51(b), a finding that a person requires court-ordered mental health servic-es must be supported by *clear and convincing evidence.*

We overrule appellant's first point of error.

▆ In his second point of error, appellant argues that the trial court erred in concluding that the State had shown by clear and convincing evidence that he met the statutory criteria for court-ordered extended mental health services.

Article 5547–51(b) provides that a jury (or judge if a jury has been waived) shall determine a person requires court-ordered mental health services only if it finds, on the basis of clear and convincing evidence, that (1) the person is mentally ill, and (2) as a result of such mental illness, the person is likely to cause serious harm to himself, serious harm to others, or, if untreated, will continue to suffer severe and abnormal mental, emotional, or physical distress and to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision to submit to treatment. The Mental Health Code defines "mental illness" as "an illness, disease, or condition which either: (A) substantially impairs the person's thought, perception of reality, emotional process, or judgment; or (B) grossly impairs behavior as manifested by recent disturbed behavior." TEX.REV.CIV.STAT.ANN. art. 5547–4(8) (Vernon Supp.1991). Additionally, the jury (or judge) must find that the person's condition will continue for more than 90 days.

▆ Article 5547–51(c) provides that the clear and convincing evidence must include expert testimony and "evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to [self] or others or the person's distress and deterioration of ability to function." TEX.REV.CIV. STAT.ANN. art. 5547–51(c) (Vernon Supp. 1991). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979). While the State's proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

Dr. Srinivasan is licensed to practice medicine in Texas, has been a psychiatrist since 1969, and has worked at Rusk State Hospital since January 1978. He is certified by the American Board of Psychiatry and Neurology. He met appellant in February 1987, when appellant was first sent to Rusk State Hospital after having been found incompetent to stand trial. Dr. Srinivasan was appellant's treating psychiatrist from February 1987 until September 1987, when appellant was transferred to Austin State Hospital. In June 1987, the doctor concluded that appellant would never become competent to stand trial, so he sent him back to the court for a commitment change. After the second competency trial, appellant was sent back to Rusk State Hospital in July 1987. Dr. Srinivasan did not see appellant after appellant's transfer to Austin State Hospital until August 1990. At that time, he was asked by the trial court to perform another examination of appellant.

Dr. Srinivasan testified that appellant met the criteria for extended court-ordered mental health services in 1987.[4] He stated that appellant was unable to find his way around inside the hospital and was disoriented. He further stated that he was likely to cause serious harm to others because he had already been charged with a felony. He further concluded that appellant's memory defects, disorientation, poor judgment, and inability to live independently showed that appellant's organic mental disorder constituted a severe and abnormal distress, and that appellant was unable to make a rational and informed choice whether to submit to mental health treatment.

Dr. Srinivasan testified that he examined appellant for 45 minutes in 1990 by conducting a psychiatric interview known as a

---

**4.** However, under cross-examination, Dr. Srinivasan stated he was not aware that one of the statutory criteria for commitment under the Mental Health Code was evidence of a recent overt act or continuing pattern of behavior tending to confirm the likelihood of harm to the person or others.

history and mental status examination. He stated that appellant did not recognize him. He also stated that appellant did not know the day of the week, month, or year, and that appellant believed either Teddy or Franklin Roosevelt was president. Dr. Srinivasan concluded that appellant was worse in 1990 than he had been in 1987, but conceded that he had not had an opportunity to observe him in the hospital for a day or two and that, since appellant had been in jail for a few weeks before the examination, he might have deteriorated as a result of being in a confined space.

Dr. Srinivasan diagnosed appellant as having a mental illness, known as an organic mental disorder, that was manifested by disorientation, memory defects, and lack of knowledge about what was happening currently in the community. He classified the disorder as probably severe, and likely to continue for more than 90 days. He stated that the organic mental disorder was a result of structural damage to the brain that was permanent and progressively debilitating. He testified that the organic mental disorder substantially impaired appellant's thought, perception of reality, emotional process, and judgment, and that appellant could seriously harm himself because, for example, he could not find his way around and was unlikely to watch for traffic. He also stated appellant could cause serious harm to others because he had previously done so.

Ms. Mitchell testified that she had known appellant for six or seven years and had seen him every day before his commitment, that he lived in the same building as she and her mother, in an apartment between theirs. She stated that appellant acted "out of whack," and waved pistols around even when unprovoked. She testified that appellant shot her without provocation, as she urged her mother to return to her apartment while the mother and appellant were "cussing" on the porch at each other. She also said other people were subject to his aggression.

Dr. Kinross–Wright has been a psychiatrist for 44 years and is presently in private practice. He met appellant in January 1987 when he was asked by the court to examine him for competency to stand trial. He also examined appellant once a year in 1988, 1989, and 1990 at the request of the court. Each time he conducted an interview known as a mental status examination, and reviewed documents sent him by the court. Each interview lasted about one hour.

Dr. Kinross–Wright testified that appellant was very angry at Ms. Mitchell and that he felt justified in shooting her, although he denied any further aggressive intent toward her. He said that appellant answered questions readily, but in a rambling and circumstantial fashion. Dr. Kinross–Wright gave appellant a recent memory test in which he asked him to remember three objects. After five minutes, appellant could only remember one. Dr. Kinross–Wright testified that appellant's remote memory was significantly impaired because he had differing recollections of the events leading up to the shooting and because he was unclear about what had happened to him during the past two and one-half years. The doctor found little change in appellant from examination to examination, and testified that appellant suffered from a mental illness known variously as dementia, organic brain syndrome, or organic brain disorder. He characterized it as a slowly progressive disorder where the brain cells die.

Dr. Kinross–Wright testified that the disorder substantially impaired, in varying degrees, appellant's thoughts, perception of reality, emotional process, and judgment. He said the disorder interfered with appellant's ability to function because of the reduced reasoning, comprehension, and judgment. He stated appellant was likely to harm himself if released because he might start drinking, which would speed up the process of brain cell deterioration as well as cause him to undertake foolish actions. The doctor testified that he could not answer if appellant was likely to harm others because appellant had been in a situation for three and one-half years where he could not demonstrate an intent to harm someone. However, he did feel that appellant might harm Ms. Mitchell if the opportunity presented itself. He stated

that a structured environment improved appellant's behavior because he was not exposed to stress and was not able to harm himself.

Dr. Kinross–Wright testified, in his opinion, that appellant could not make a rational and informed choice whether to submit to mental health treatment and that appellant's mental illness would continue for more than 90 days. He believed that appellant met the criteria for court-ordered mental health services.

Arnold Gomez has a master's degree in social work and has been a social worker at Austin State Hospital for 15 years. He met appellant in September 1987, when appellant was transferred to Austin State Hospital from Rusk State Hospital. He stated appellant exhibited no behavioral problems or violent acts. He described appellant's typical day as being wakened by the staff, being directed to the dining room, being told to go to his class, and being directed to his other meals and programs. Mr. Gomez stated that he was not qualified to give medical or psychiatric diagnoses, but that he felt, based on appellant's actions at Austin State Hospital, that appellant would act the same way if released into the community. Mr. Gomez testified that appellant was able to take care of himself, and that he really was not confused or disoriented, just lacking in education.

Dr. Bayliss is a staff psychiatrist at Austin State Hospital. He has been a psychiatrist since 1979, and the treating psychiatrist for appellant since 1988. Dr. Bayliss testified appellant had some impairment in his memory that he would rate as very mild. He stated that appellant had managed to hold down jobs much of his life and to maintain himself independently. He believed that independent living was not hazardous to appellant, and stated that appellant had been free to roam the grounds at Austin State Hospital.

Dr. Bayliss testified that appellant has a mental illness that impairs thought, perception of reality, emotional process, or judgment, but not substantially. He believed that appellant did not meet the criteria for court-ordered mental health services. He stated that appellant displayed no disturbed behavior while at Austin State Hospital. He felt that the shooting incident in January 1987 was not a recent event. He also stated that Austin State Hospital was not a low stress environment because there were people there who were demented and had behavioral disorders, and would go up and touch other people. He felt certain that people had touched appellant, but that appellant had not shown any aggressive behavior in response. Dr. Bayliss said that, for the most part, appellant was able to make a rational informed choice about submitting to mental health services. He did not believe that appellant was likely to cause serious harm to himself or others. Dr. Bayliss conceded that he had no experience of appellant outside the structured environment of the hospital, and that it was possible that appellant might revert back to his previous behavior.

Drs. Srinivasan and Kinross–Wright testified that appellant is mentally ill, likely to harm himself and others, and unable to make a rational and informed choice whether to submit to mental health treatment, and will, if untreated, continue to suffer distress and deterioration of his ability to function independently. They further stated that appellant's condition would continue for more than 90 days. Dr. Bayliss controverted their testimony. The jury is the sole judge of the credibility of a witness and weight to be given his testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.). While evidence of appellant's mental illness was disputed, there was clear and convincing proof of such illness that could allow the jury to form a firm conviction concerning its existence and appellant's need for court-ordered extended mental health services.

The clear and convincing evidence showed a continuing pattern of behavior tending to confirm the likelihood of serious harm to appellant or others and a deterioration of appellant's ability to function independently. In his conversations over several years with Drs. Srinivasan and Kinross–Wright, appellant showed himself to be disoriented to the extent that he might suffer harm if he left the structured environment

of the state hospital. According to Dr. Srinivasan, appellant's mental condition has progressively deteriorated from 1987 to 1990. According to Dr. Kinross–Wright, there had been little change in appellant's condition from year to year, but appellant's organic brain disorder substantially impaired his thoughts, perception of reality, and judgment. We infer from the testimony of Dr. Bayliss and Mr. Gomez that appellant responded well to commands, but could not function without the schedule enforced by hospital personnel. Appellant also showed, in his conversations with Dr. Kinross–Wright, continuing hostility to Ms. Mitchell, raising serious questions about her safety if he returned to the small community of Bryan where they both lived.

We overrule appellant's second point of error.

■ In his third point of error, appellant asserts that the trial court erred in failing to order mental health services for him in the least restrictive appropriate setting available.

After the jury has determined that a person is mentally ill, as happened here, the judge must dismiss the jury and may hear additional evidence on alternative settings for care. TEX.REV.CIV.STAT.ANN. art. 5547–51(d) (Vernon Supp.1991). The trial court must either order in-patient care or require the person to participate in other mental health services. TEX.REV.CIV.STAT. ANN. art. 5547–51(d)(1), (2) (Vernon Supp. 1991). In determining the setting for care:

> [T]he judge shall consider the recommendation for the most appropriate treatment alternative filed pursuant to Section 34 of this code. Mental health services shall be ordered in the least restrictive appropriate setting available.

TEX.REV.CIV.STAT.ANN. art. 5547–51(e) (Vernon Supp.1991). Additionally, TEX.REV.CIV. STAT.ANN. art. 5547–80(b)(1) (Vernon Supp. 1991) states that all patients receiving mental health services are entitled to appropriate treatment in the least restrictive appropriate setting available consistent with their protection and that of the community. "Least restrictive appropriate setting for treatment" means the available treatment setting that provides the patient with the highest likelihood of improvement or cure and that is no more restrictive of the patient's physical or social liberties than is necessary for the most effective treatment of the patient and for adequate protection against any dangers the patient poses to himself or others. TEX.REV.CIV.STAT.ANN. art. 5547–4(16) (Vernon Supp.1991). The county facility designated by the Texas Commissioner of Mental Health and Mental Retardation files its recommendation for the most appropriate treatment alternative when directed by the court. TEX.REV.CIV. STAT.ANN. art. 5547–34(a), (b) (Vernon Supp. 1991).

■ In reviewing the trial court's decision on the most appropriate treatment alternative, we must determine if the trial court abused its discretion. *See, e.g., In re M.D.B., Jr.,* 757 S.W.2d 415, 418 (Tex.App.–Houston [14th Dist.] 1988, no writ) (characterizing point of error that court did not receive recommendation from county facility for the most appropriate treatment alternative under article 5547–50(e), temporary court-ordered mental health services, as an abuse of discretion); TEX.REV.CIV.STAT.ANN. art. 5547–51(d)(1), (2) (judge *may* enter an order committing person to mental health facility or requiring participation of person in mental health services other than in-patient care). Abuse of discretion implies more than an error of judgment; it must amount to arbitrary and unreasonable action by the trial court. *Parks v. U.S. Home Corp.,* 652 S.W.2d 479, 485 (Tex. App.–Houston [1st Dist.] 1983, writ dism'd). In determining whether there has been an abuse of discretion, we view the evidence in the light most favorable to the action of the trial court, and indulge every legal presumption in its favor. *See id.*

During the portion of the trial to determine the appropriate treatment for appellant, the State gave as its position that Austin State Hospital was the appropriate placement for appellant, based on the testimony of Dr. Bayliss and Mr. Gomez. The trial court took judicial notice of all evidence presented during the first portion of the trial.

Barbara Dever of the Mental Health Mental Retardation Authority of Brazos County, the facility directed by the court to

give a recommendation on the most appropriate treatment alternative, testified on behalf of appellant. She stated that appellant was screened by the authority, and his Austin State Hospital records were reviewed, at the time Austin State Hospital recommended he be discharged. She testified that four problems were identified and recommendations were developed to meet them.

With respect to the housing problem, she described the authority's residential program at Mary Lake. All the residents at Mary Lake, a 16–bed facility with a 24–hour program, are required to participate in chores, such as cleaning up their areas and the common areas and participating in meal preparation. Residents do their own laundry, although staff will provide supervision and training. After the initial two-week period, residents are allowed to leave on a sign-out basis, leaving their destination, address, telephone number where they may be reached, and the estimated time of their return. They must call if they cannot return at that time. However, there is no supervision of them while they are off the grounds. Residents take their own medication, but staff are present when medication is taken and record it. Residents get themselves up in the morning, but staff will waken them if they fail to. There is a schedule of classes, but staff do not routinely tell residents where to go and when. Ms. Dever conceded that Mary Lake's clear goal was that residents stay there only three to six months, having reached an improved level leading to independent functioning. She stated that, while appellant might not medically improve, his quality of life could improve, noting that he had learned to write his name at Austin State Hospital. Ms. Dever testified that if the potential was there that appellant would cause serious harm to himself and others, he would be screened and assessed immediately by the crisis intervention team, with further assessment as necessary by a psychiatrist.

During the portion of the trial to determine if appellant suffered from mental illness, Dr. Srinivasan testified that appellant could not find his way around Rusk State Hospital and, consequently, could harm himself. Dr. Kinross–Wright stated that the structural environment at Austin State Hospital improved appellant's behavior because he was not exposed to stress. Mr. Gomez testified to appellant's highly structured daily routine at Austin State Hospital and to his model behavior under that structure. Dr. Bayliss agreed that he had no experience of appellant outside the structured environment of Austin State Hospital and that it was possible that appellant could revert back to his previous behavior if that structure was removed. Ms. Dever's testimony indicated that Mary Lake did not provide the structure that Austin State Hospital did. Furthermore, when appellant left the confines of Mary Lake, whether to visit or to work, he would be unsupervised.

The trial court found that structure was vital to appellant's needs, that appellant had a mental illness as found by the jury, and that he had a history of violent behavior. After reviewing the testimony, we cannot say the trial court abused its discretion in finding that the most appropriate treatment alternative was Austin State Hospital.

We overrule appellant's third point of error and affirm the judgment.