In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-525 CR


____________________



JOHN PERRY LOVE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 258th District Court


Polk County, Texas


Trial Cause No. 17,141






MEMORANDUM OPINION


 A jury convicted John Perry Love of aggravated sexual assault of a child, and
sentenced him to forty years' confinement in the Texas Department of Criminal Justice,
Institutional Division. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(ii), (2)(B) (Vernon Supp.
2005). From that verdict, Love appeals.

 Love raises three issues regarding the admission of evidence of an extraneous offense. 
Love also claims the admission of that evidence violated his motion in limine and his right
to a fair and impartial trial under the United States Constitution and the Texas Constitution. 
Additionally, Love challenges the factual sufficiency of the evidence to support the verdict.

 The record reflects that in 2000, the victim K.P., her older sister Amanda, their mother
Teresa, Love, and Amanda's and Love's first child were living at the same residence. K.P.
was approximately nine years old at the time. Love was Amanda's live-in boyfriend; they
moved in together when she was only thirteen or fourteen years of age and Love was
eighteen or nineteen. Their first child was born in 1999 and the second in 2001. 

 When K.P. was twelve, she told her grandmother, Helen Phillips, that Love made her
have oral sex with him. These assaults occurred in the bedroom while Amanda was home. 
K.P. said Amanda would be taking her bath and Love would tell her not to come out of the
bathroom until he told her to, and he would then take K.P. into the bedroom. When this
occurred, Teresa was at work; she worked nights. Helen testified that Amanda and Love,
who were living elsewhere when K.P. made the allegations, received an eviction notice and
there had been some discussion of the couple moving in to K.P.'s home. Lou Liles, CPS
supervisor for Polk and San Jacinto Counties, testified it is not unusual for a victim to wait
years before reporting abuse. Liles agreed something that commonly "sets that off" is a fear
that something is about to happen. Helen was also questioned about an ongoing Child
Protective Services (CPS) case involving Love's two children. Helen testified the children
were living with her daughter, Michelle, and that she had not testified in any proceedings
involving that case, nor had she been interviewed by CPS. 

 K.P. testified Love forced her to perform oral sex on him "a couple of nights a week"
over a two-month period. K.P. stated the assaults occurred at night when her mother was
working and when Amanda was sleeping. The assaults continued until K.P. told him that
she "didn't want to do that any more." Love and Amanda later moved and it was not until
three years later that K.P. told anyone about the sexual assaults. Upon learning that Amanda
and Love might be moving into the home she was currently sharing with her grandmother,
mother, aunt and uncle, K.P. revealed the assaults to her grandmother who made a report to
the authorities.

 Detective Craig Finegan received a report concerning an allegation of sexual abuse
from Helen Phillips. Detective Finegan contacted Helen to "set up a meeting with her." 
Detective Finegan questioned K.P. about the allegations and took her written statement.
Attempts were made by the Sheriff's Department to contact Love on numerous occasions. 
Eventually, upon searching his home pursuant to a felony arrest warrant, Love was found
hiding in a broom closet. 

 Love's mother, Rosemary, testified he and Amanda "were always together." 
Rosemary said she had never seen Love act inappropriately toward K.P. or any other child. 
She further testified "I never seen just [Love] and [K.P.] together." Rosemary claimed the
allegations were in response to a custody battle over Love's two children. 

 Amanda testified that while she and Love lived in her mother's home with K.P., she
never saw Love act inappropriately toward K.P. or any other person. Amanda stated she and
Love had a normal sexual relationship, "were together all the time," and went everywhere
together from 1998 to 2001. According to Amanda, Love would not have had the
opportunity to sexually abuse K.P. Amanda denied taking extended baths or going to sleep
at any time separate from Love. She testified she was a light sleeper and believed she would
have heard if Love walked past the bedroom to go to the room where K.P. slept. Amanda
also testified the allegations stemmed from the custody battle over her two children. 

 Following a hearing outside the presence of the jury, the State was permitted to call
K.G. to testify as a rebuttal witness to an extraneous offense. That offense occurred
approximately eight months prior to trial. K.G. was fourteen and a friend of Amanda's when
she stayed the night at Amanda's and Love's home. K.G., Amanda, and Love were talking
in the bedroom until Amanda fell asleep. K.G. and Love went into another part of the house
where Love sexually assaulted K.G. on the couch. The couch was only twenty feet from the
bedroom where Amanda was sleeping, but she did not wake up during the assault. 

 In three points of error, Love claims K.G.'s testimony was inadmissible pursuant to
Tex. R. Evid. 401, 403, and 404(b). However, the record reflects the objection made by
defense counsel was only as to Rule 403. Counsel argued the State had not met the four-part
test set forth in Bradshaw v. State. See Bradshaw v. State, 65 S.W.3d 232, 237-38 (Tex.
App.--Waco 2001, no pet.). Accordingly, we find appellate counsel's arguments regarding
Rules 401 and 404(b) do not comport with the objection made at trial and nothing is
preserved for our review. Santellan v. State, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997).

 Love further argues the State failed to provide notice pursuant to Tex. R. Evid.
404(b). Rule 404(b) requires that reasonable notice is to be given upon request by the
accused in a criminal case where the State intends to use the evidence of other crimes,
wrongs, or acts as part of the State's case-in-chief. Tex. R. Evid. 404(b). The State in the
instant case did not proffer the evidence in its case-in-chief and is not required to give notice
when the evidence is used to rebut a defensive theory. See Webb v. State, 36 S.W. 3d 164,
179 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). Accordingly, issues one and three
are overruled.

 We now turn to the admissibility of the evidence under Rule 403. "The Court of
Criminal Appeals has held that '[r]ule 403 favors the admission of relevant evidence and
carries a presumption that relevant evidence will be more probative than prejudicial.' 
Williams v. State, 958 S.W.2d 186, 196 (Tex.Cr.App.1997)." McCulloch v. State, 39 S.W.3d
678, 681 (Tex. App.--Beaumont 2001, pet. ref'd). In this case, the evidence was both
strongly probative and prejudicial. "We review its admission under an abuse of discretion
standard." Id. (citing Reese v. State, 33 S.W.3d 238, 241 (Tex.Crim.App.2000)). In
conducting a Rule 403 balancing test, a trial court should consider the following factors: "(1)
the probative value of the evidence; (2) the potential of the evidence to impress the jury in
some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop
the evidence; and (4) the proponent's need for the evidence." Id. (citing Wyatt v. State, 23
S.W.3d 18, 26 (Tex. Crim. App. 2000)). 

 Regarding the first factor, the extraneous offense was probative to rebut Love's
defensive theories that the allegations were fabricated as part of the custody suit regarding
his two children and that he was never alone with K.P. so as to have an opportunity to assault
her. See Waddell v. State, 873 S.W.2d 130, 136 (Tex. App.--Beaumont 1994, pet. ref'd) (the
extraneous acts were a logical and necessary rebuttal of the defensive theory of fabrication);
Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (the State may offer evidence
of an extraneous offense to rebut a defense of "lack of opportunity"). 

 As to the second factor, we find the extraneous offense evidence has the potential to
impress the jury in some irrational, yet indelible way. A jury could not help but be
emotionally impacted by evidence that Love sexually assaulted another girl, age fourteen,
only eight months before trial.

 The third factor weighs in favor of the State. The record reflects the time needed to
develop K.G.'s testimony was less than thirty-five minutes on the last day of trial. 

 The fourth factor also weighs in favor of the State. There was no other witness to
dispute the testimony of Amanda that Love could not have assaulted K.P. while she
(Amanda) was sleeping in the house. We therefore find the trial court did not abuse its
discretion in concluding that the danger of unfair prejudice did not substantially outweigh
the probative value in this case. Issue two is overruled.

 Love also argues the admission of the extraneous offense testimony was in violation
of his motion in limine. However, the purpose of such a motion is not to exclude testimony,
but rather to allow the trial court to determine its admissibility prior to its being heard by the
jury. See Sims v. State, 816 S.W.2d 502, 504 (Tex. App.--Houston [14th Dist.] 1991, pet.
denied). Because the record reflects the trial court properly heard the issue of admissibility
outside the jury's presence, the motion was not violated. Love's complaint is without merit.

 Love further asserts the admission of the extraneous offense violated his right to a fair
and impartial trial under the U.S. Constitution and the Texas Constitution. See U.S. Const.
amend. VI, Tex. Const. Art. I, §10. Love cites no authority in support of his position. See
Tex. R. App. P. 38.1(h). As we have found the trial court did not err in admitting evidence
of the extraneous offense, Love's argument is without merit.

 Lastly, we address Love's contention the evidence is factually insufficient to support
the jury's verdict. Love claims the verdict was not supported by any direct evidence and that
the proof offered was entirely circumstantial. Love makes no references to the record and
cites no authority on this argument. See Tex. R. App. P. 38.1(h). Love fails to explain why
the evidence supporting the verdict is too weak to sustain the finding of guilt beyond a
reasonable doubt. See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). 
Love also neglects to refer this court to any evidence contrary to the verdict, much less set
forth contrary evidence strong enough that the beyond-a-reasonable-doubt standard could not
have been met. Id. Furthermore, Love is incorrect. As the evidence set forth above
demonstrates, K.P.'s testimony constitutes direct evidence and is supported by other evidence
adduced at trial. Considering all of the evidence in a neutral light, we find a jury was
rationally justified in finding guilt beyond a reasonable doubt.

 For all these reasons, the judgment of the trial court is affirmed.

 AFFIRMED


 ________________________________

 CHARLES KREGER

 Justice


Submitted on March 3, 2005 

Opinion Delivered July 13, 2005

Do not publish


Before Gaultney, Kreger, and Horton, JJ.